In the Matter of the Judicial Settlement of the Account of CAROLINE P. T. CRAWFORD et al., as Executors, etc.

T. deposited certain moneys in a bank and in a trust company to the credit of his daughter C. The first deposit was made in her presence and for her personal use. The deposits were entered in a pass-book which was delivered by T. to C. The latter drew out the deposits in bank and deposited them in the trust company, where they were included in the account with the deposit then made by T. *Held*, that there was a valid and irrevocable gift, fully completed and executed, vesting the absolute title to the deposits in C.

T. purchased certain coupon bonds, payable to bearer, which were kept by him up to the time of his death, and he cut off and collected the coupons as they fell due, except those falling due during six months prior to his death. At the time of the purchase of the bonds T. stated that he wanted them for C. and afterwards he directed his banker, who made the purchase for him, to have them registered in her name. The banker took them to the office of the company which issued them and the name of C. was indorsed upon each bond with date of indorsement and name of the transfer agent. It did not appear that C. knew anything of the transaction. *Held*, that, as there was no delivery of the bonds, there was no completed gift.

*Martin* v. *Funk* (75 N. Y. 134) distinguished.

The bonds were issued by a foreign corporation, and made payable in New York or Philadelphia. *Held*, that the act of 1871 (Chap. 84, Laws of 1871), providing for the registry of railroad and other corporate mortgage bonds did not apply; that it applied only to bonds which have been or may be issued and are payable in this state; but that even if said act was applicable, the registry did not change the legal title to the bonds while the original owner continued to hold them; that the title would not pass until a delivery of the bonds to the intended donee or to some one for her, although the general negotiability of the bonds might have been destroyed by the indorsement.

T. left a will, executed after all of the deposits, except one small one, were made, by which various legacies were given to C. *Held*, that there was no ademption of the legacies by the gift of the moneys deposited, nor were they adeemed *pro tanto* by the deposit made after the execution of the will.

Where a will gave the testator's residuary estate to his executors in trust, with authority to sell the real estate and to divide the whole into specified parts, each to be kept invested and the income paid to a beneficiary named during life, *held*, that upon the division, the duties of the executors, as such, ceased, and they held the property as trustees; and so, they were entitled to double commissions.

(Argued April 15, 1889; decided June 4, 1889.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 6, 1888, which modified, and affirmed as modified, a decree of the surrogate of the county of Orange on settlement of the accounts of the executors of the estate of Peter Townsend, deceased.

Said Peter Townsend died in September, 1885, leaving a will executed on the 8th day of August, 1883. This will was duly probated, and in December, 1886, his executors filed their account.

The objectors before the surrogate raised no question as to the correctness of the figures contained in the account, or as to the disposition of the estate that came into the hands of the executors, but it was claimed that they had neglected to charge themselves with certain bonds of the Shenandoah Valley Railroad and with certain moneys deposited with the Farmers' Loan and Trust Company to the credit of Caroline P. T. Crawford, amounting to $102,120. Mrs. Crawford claimed these bonds and this money as gifts made to her by the testator in his lifetime. It was on these issues that evidence was taken and findings made by the surrogate.

The facts material to the questions discussed are stated in the opinion.

*William D. Shipman* for appellants. There are two essentials to a valid gift, an intention to give and a sufficient delivery. (*Young* v. *Young*, 80 N. Y. 422, 430; *Jackson* v. *T. T. S. R. R. Co.*, 88 id. 520, 526; *Basket* v. *Hassell*, 107 U. S. 602; *Scott* v. *Lannan*, 104 Penn. St. 593; *Flanders* v. *Blandy*, 12 N. E. Rep. 321; *Sherman* v. *N. B. F. C. S. Bk.*, 133 Mass. 581; *Nutt* v. *Morse*, 142 id. 1; *Bunn* v. *Markham*, 2 Taunt. 224; *Farquharson* v. *Cave*, 2 Coll. 356; *Trimmer* v. *Danby*, 25 L. J. [N. S.] Eq. 424.) The deposit of money in the trust company was not intended to constitute a present gift to Mrs. Crawford. The intent is a necessary element of the transaction. (*Jackson* v. *T. T. S. R. R. Co.*,

88 N. Y. 520, 526.) Even if the gifts to Mrs. Crawford were valid, as such, they constituted ademptions *pro tanto* of the provisions for her in the will. (4 Kent's Comm. [11th ed.] 646; *Hine* v. *Hine*, 39 Barb. 507, 511; *Ex parte Oakey*, 1 Bradf. 281; *Langdon* v. *Astor*, 16 N. Y. 9, 34; *Benjamin* v. *Dimick*, 4 Redf. 7; *Beebe* v. *Estabrook*, 79 N. Y. 246; *Alexander* v. *Alexander*, 1 N. Y. S. R. 508; *Paine* v. *Parsons*, 14 Pick. 318; *Kirk* v. *Eddowes*, 3 Hare, 509; *Dugan* v. *Hollins*, 14 Md. Ch. Dec. 139; *Hopwood* v. *Hopwood*, 7 H. L. Cas. 728; *Miner* v. *Atherton*, 35 Penn. St. 528; *Leighton* v. *Leighton*, Eng. L. R., 18 Eq. 458; *Van Houten* v. *Post*, 33 N. J. Eq. 344; *Lawrence* v. *Lindsay*, 68 N. Y. 108; 2 Williams on Exrs. [Perkin's Am. ed.] 1439; *Durham* v. *Wharton*, 10 Bligh. 526, 544; 3 Cl. & Fin. 146; *Trimmer* v. *Bayne*, 7 Ves. 508; *Baugh* v. *Reid*, 1 id. 257; *Monck* v. *Monck*, 1 Ball & B. 298; *Platt* v. *Platt*, 3 Sim. 503; *Barry* v. *Harding*, 1 J. & L. T. 475; *Twinning* v. *Powell*, 2 Coll. 262; *Chichester* v. *Coventry*, 2 H. L. 71; *Bedell* v. *Carll*, 33 N. Y. 581.) The executors were properly allowed only half commissions on principal. (*Johnson* v. *Lawrence*, 95 N. Y. 154; *Laytin* v. *Davidson*, Id. 263.)

*John M. Bowers* for respondents. The money deposited in the Farmers' Loan and Trust Company to the credit of Caroline P. T. Crawford was actually given and delivered to her by the testator in his lifetime. It was reduced to possession by her and constitutes a completed gift. (1 Gray's Cases on Property, 165, 167; *Brinckerhoff* v. *Lawrence*, 2 Sandf. Ch. 402; *Davis* v. *Davis*, 1 N. & M. 225; *Grangiac* v. *Arden*, 10 Johns. 293; *Francis* v. *B. El. R. R. Co.*, 17 Abb. N. C. 1; *Grymes* v. *Hone*, 49 N. Y. 17, 22; *De Caumont* v. *Bogert*, 36 Hun, 382; *Jones* v. *Farrell*, 1 De G. & J. 208; Addison on Cont. [6th ed.] 821; *Sargent* v. *E. M. R.*, 9 Pick. 201; *Nat. Bk.* v. *Watsontown Bk.*, 105 U. S. 222.) The registration of the bonds in the name of Mrs. Crawford was, in effect, an assignment to and delivery to her. It was not essential that this assignment should have been communi-

cated to the assignee. (*Sharpless* v. *Welsh*, 4 Dallas, 279.) The registration by the company must be treated as a registration for Mrs. Crawford's benefit; and under the wording of the above act of 1871 (chap. 84), Mr. Townsend could never reacquire the title he had given up except by obtaining Mrs Crawford's indorsement. (*Young* v. *Young*, 80 N. Y. 422; *Jackson* v. *T. T. S. R. Co.*, 88 id. 520.) While a delivery is necessary there is no rule which requires an absolute personal transaction between the donor and donee by which he puts the securities into the donee's possession as being the sole test. (*Gray* v. *Barton*, 55 N. Y. 72; 2 Kent's Com. 439; *Champney* v. *Blanchard*, 39 N. Y. 111; *Westerlo* v. *De Witt*, 36 id. 340; *Grymes* v. *Hone*, 49 id. 17; *Hunter* v. *Hunter*, 19 Barb. 638; *Whiting* v. *Barrett*, 7 Lans. 109; *Martin* v. *Funk*, 75 N. Y. 134; *Richardson* v. *Richardson*, L. R., 3 Eq. Cas. 684; *Morgan* v. *Malleson*, L. R., 10 id. 475; *Armitage* v. *Mace*, 96 N. Y. 538; *Doty* v. *Wilson*, 47 id. 584; *Fulton* v. *Fulton*, 48 Barb. 591.) There was no ademption of the provisions made in the testator's will in favor of Mrs. Crawford by either of the gifts referred to in the foregoing points. (*Abbott* v. *Middleton*, 7 H. L. C. 89; *Gordon* v. *Gordon*, L. R., 5 H. L. 284; *Seguine* v. *Seguine*, 4 Abb. Ct. App. Dec. 194; *Clapp* v. *Fullerton*, 34 N. Y. 192; *Arnold* v. *Haronn*, 43 Hun, 278; *De Caumont* v. *Bogert*, 36 id. 391; *Doty* v. *Wilson*, 47 N. Y. 586; 2 Williams on Exrs. 1070; 2 Wharton's Evidence [3d ed.], § 1003a.) The executors are entitled to commissions as executors on all funds received and paid out by them, including the balance paid over by them to themselves as trustees. (*Laytin* v. *Davidson*, 95 N. Y. 266; 29 Hun, 622; *Meeker* v. *Crawford*, 5 Redf. 450; *In re Mason*, 98 N. Y. 527; *Phoenix* v. *Livingston*, 101 id. 451; *Irving Bk.* v. *Adams*, 28 Hun, 108; *Stillwell* v. *Carpenter*, 62 N. Y. 639.)

PECKHAM, J. We agree with the courts below in regard to the deposit of moneys in the bank, and, subsequently, in the trust company. There was an executed gift, completed by a

full delivery of the subject thereof, and a change of title therein. The surrogate has found that the donor made the first deposit to the credit of Mrs. Crawford in the bank in her presence, and for her personal and specific use. The subsequent deposits he also finds were made by the donor in the trust company to the credit of Mrs. Crawford, and they were entered in a pass-book supplied by the company, which book was delivered by the donor to her. There was evidence sufficient to authorize such findings. The donor thus parted completely with the title to the moneys which he deposited, and the same became subject to the exclusive and entire control of the donee, and were legally and in fact in her full possession. She herself drew the $30,000 which had been deposited to her credit in the bank, and they were deposited in the trust company, and formed part of the whole fund which was, from time to time, deposited by the donor in such company to her credit.

There was nothing more that could have been done in order to clothe the donee with the absolute and full title and control of the moneys thus deposited, and nothing more was necessary to complete a valid and irrevocable gift. It is very probable that one of the motives which prompted the first deposit on the part of the donor was that the donee should have some money in the house in case he should be taken away. One of the witnesses testified that the donor so stated in his presence. But the evidence is, as we think, entirely insufficient to show that the gift of the $30,000 was only upon the condition that it should not take effect until his death. Nor can the subsequent deposits, in the light of the evidence, be regarded as a gift only upon that condition. Within all the authorities the facts make a valid and executed gift *in presenti* of the moneys in question.

But we cannot assent to the decisions of the courts below, which hold the bonds to have been effectually disposed of by the intending donor in his lifetime by a valid gift, completed by delivery, to Mrs. Crawford or to any one for her as her agent. We do not think there was any such delivery. He

may have intended the bonds as a gift, but his intention was never, as we think, effectually carried out. They were coupon bonds payable to bearer, and were bought by the direction of the donor, by his broker, and delivered to the donor and kept by him up to the time of his death. There was a book found among his effects after his death, which purported to be an inventory of the securities of his estate in which these bonds were entered, some of the entries, if not all, were in his hand-writing. The coupons for the semi-annual interest had been cut off by him and collected for him as they became due subsequent to the purchase, excepting those which were due six months prior to his death, and those coupons had not been detached from the bonds. The proceeds of the coupons which had been collected had been passed to his credit by the bankers who collected them. It appeared in evidence that the donor had given direction to his bankers to purchase the bonds, and he stated at the time that he wanted them purchased for Carrie (the intended donee), and after they had been purchased he directed his banker to have them registered in her name, and the banker thereupon took them to the office of the company and the name of the intended donee was indorsed upon each bond, together with the date of such indorsement and the name of the transfer agent. The bonds were then brought back and delivered to the donor, who kept them thereafter as above stated. There is no evidence that the donee knew anything of the transaction or that she was ever aware of anything concerning the intended gift.

Upon these facts we do not see that there was ever any delivery of the bonds. Nothing appears in the case as to what was the effect of the so-called registry. We are not prepared to hold that the simple indorsement on a bond payable to bearer, of the name of another party than the true owner, made at his request and at the office of the company issuing the bond, and by an officer thereof, passes the title to the bond to the party whose name is thus indorsed. An owner of a bond may intend to give it to another, and for that purpose he may obtain such an indorsement, but that does not

constitute a delivery of the gift to such person. The owner may subsequently change his mind, and we do not say that he could not effectuate such change without the aid of an intended donee to whom he had never delivered the gift. The most that the evidence shows is an intention to make a gift of these bonds, but the material fact of a delivery is entirely unproved and cannot be implied from the evidence.

The case has nothing in common with that of *Martin* v. *Funk* (75 N. Y. 134), and kindred cases. There was a declaration of trust in those cases in such form that the donor stated that he was, and he thereby became, a trustee for the donee, and the deposit or gift was made in that character. Nothing of the kind exists here.

Neither can it be successfully argued that the delivery of the bonds by the donor to the banker to have them registered in the name of the donee, was a delivery to the agent of the donee. It was just what it purported to be on its face, a delivery of the bonds to his own banker, who had purchased them under his own directions, and the banker continued to act as the agent of the person under whose directions he purchased them, when he had the bonds registered as he was by him directed to do.

Nor does it seem that any aid is furnished the respondent by reference to the act of 1871, chapter 84. That act provides for a registry of railroad and other corporate mortgage bonds payable to bearer, for which a registry is not by law provided, which have been or may thereafter be issued and made payable in this state, so as to render such bonds non-negotiable. The act would seem to refer only to bonds which have been or may be issued and payable in this state. The bonds in question were issued in the state of Virginia and payable in Philadelphia or New York, the principal in 1921, and the interest semi-annually.

But even if applicable to these bonds, the registration had no effect upon the coupons, and the possession of the bonds by the original owner gave him complete control over the coupons and entire power to collect them and otherwise dispose

of them.   And again, even if the registry rendered the bonds themselves non-negotiable, we do not see that such fact absolutely changed the legal title to them while the original owner continued to hold them and failed to carry out his intention to give by a delivery of the bonds to the donee.   To render a bond non-negotiable, by the mere registry of it in the name of another, is not by any means the same in law or in fact as the transfer of the title to the instrument to the party in whose name it may be registered.   The title does not pass until a delivery of the bond to the person intended, or to some one for him, although the general negotiability of the bond may have been destroyed by the indorsement.   If an owner of shares of stock in a corporation, intending to give them to A., should take the scrip to the office of the company and surrender it and receive new scrip in the name of A., has he by this mere change of title on the books of the company, while retaining the entire possession and control of the scrip, and without any delivery thereof to A., accomplished a valid executed gift of the ownership of the shares to his intended donee?   We should say clearly not.   In this case the bonds belonged to the donor, as all agree, up to the time of the delivery for registry.   After that, even if it be assumed that they were in consequence thereof rendered non-negotiable, how does that change the title?   How does it divest the original owner of his right to the bond and to its possession and control?   Could the intended donee maintain an action against the donor to obtain its possession?   We think not, and for the very good reason that it would not belong to him.

What the particular rights of the original owner, as against the company, might be, and how he should proceed in case he met with a refusal of the company on his demand to erase the registry, are questions not now arising.   We are of the opinion, however, that if it be conceded that the donor intended to give these bonds away, he never accomplished such purpose by any valid delivery thereof, and they remained his property at the time of his death.

We also think that there was no ademption of the legacies

to Mrs. Crawford by the gift of the money.    We are not able
to see how a legacy can be adeemed by a gift made before the
execution of the will in which the legacy was given.    The
small deposit which was made subsequent to the making of
the will was but carrying out a purpose entertained long prior
thereto, and the legacy contained in the will was not, as we
think, adeemed *pro tanto* by the deposit mentioned.*

          *          *          *          *          *          *          *

Lastly, we think the court at General Term was right in
awarding double commissions.    As executors, it was their duty
to pay the debts of the deceased, and then all the residue of
the property, which was not devised or bequeathed to others,
was, by the third clause of the testator's will, given to the
executors in trust for the purposes therein mentioned.    They
were authorized to sell all the real estate thus devised to them,
and they were then directed to divide all the property they
received into thirty-two equal parts, and to invest in their
names, as trustees of his will, five parts for the benefit of his
daughter Mrs. Meagher, and to pay over to her the interest
and income thereof during her life, and upon her decease to
transfer the same as therein directed.    Eight of such thirty-
two parts were to be invested in their names as trustees under
his will for the benefit of his daughter, Mrs. Barlow, and the
interest and income thereof were to be paid to her during her
life, and upon her death the property was to be transferred as
directed in the will, and the remaining nineteen parts were to
be similarly invested, and on the same terms, for the benefit
of his daughter, Mrs. Crawford, during her life, with
remainder over.

We think that after the sale of the real estate and the pay-
ment of debts the duty of the executors ended by the
payment to the trustees of the thirty-two parts into which the

---

* NOTE.— The omitted portion of the opinion relates to exceptions to evi-
dence alleged to have been erroneously received on the trial.    The conclu-
sion of the court in regard to such evidence is, that striking it out there
remained sufficient evidence not contradicted which demanded the decision
made by the surrogate, and that, therefore, there was no ground for reversal.

estate directed to be paid over to them was to be divided. From that time the duties of the trustees commenced, and they were to invest in their names, as trustees, the five, eight and nineteen parts, respectively, in accordance with the directions of the will, and at the death of the testator's daughters, respectively, the trust estate is to be paid by them as trustees, and not as executors. This gives them the right to double commissions.

The order of the General Term should be modified by charging the executors with the twenty Shenandoah Valley bonds, and as modified affirmed, with costs of all parties to be paid out of the estate.

All concur.

Judgment accordingly.