LOUISA W. HAMER, RESPONDENT, *v.* FRANKLIN SIDWAY, AS EXECUTOR OF THE LAST WILL AND TESTAMENT OF WILLIAM E. STORY, DECEASED, APPELLANT.

*Promise to make a gift — evidence of delivery is essential to its enforcement — a motive for a promise is not a consideration therefor — statute of limitations — trust.*

An uncle promised his nephew that if he would not drink, smoke, play cards for money, or play billiards, until he was twenty-one years of age, he, the uncle, would give him $5,000 on that day.

Subsequently, on the nephew's becoming of age, he wrote to his uncle as follows: "I am twenty-one years old to-day and I am now my own boss, and I believe, according to agreement, that there is due me five thousand dollars. I have lived up to the contract to the letter in every sense of the word," to which the uncle replied: "Your letter of the 31st ult. came to hand all right, saying you had lived up to the promise made to me several years ago. I have no doubt but what you have, for which you shall have five thousand dollars as I promised you." The letter further stated that the writer had the money in the bank which he intended for his nephew, and which he should certainly have, further stating: "I do not intend to interfere with this money in any way until I think you are capable of taking care of it, and the sooner that time comes the better it will please me."

In an action brought to recover this money:

*Held,* that the word "gift" signified a gratuitous transfer without any equivalent; that although the intention to give may be established by the most satisfactory evidence, and instruments to that effect may have been formally executed by the donor purporting to transfer title to the donee, or there may be the most explicit declaration of an intention to give, or of an actual present gift, yet unless there is delivery the intention is defeated.

That as the gift in this case was not completed, by a delivery of the subject-matter of it, it was invalid and did not give a cause of action to the nephew for the recovery thereof.

That while there was a motive for this promise there was no consideration therefor.

That, even if it were assumed that there was a sufficient consideration to uphold the promise, the claim of the nephew to this $5,000 accrued when he became twenty-one years of age, in 1875, and was consequently barred by the statute of limitations at the time that this action was brought in 1887.

That, in this case, there was no declaration of a trust under which the uncle was to hold this money, nor circumstances which showed that a trust was intended, and consequently the bar of the statute was not avoided.

APPEAL by the defendant from a judgment, entered in the office of the clerk of the county of Chemung on the 1st day of October, 1889, in favor of the plaintiff, for $9,585.89 and interest and costs.

The action was brought in December, 1887, to recover $5,000, with interest from February 6, 1875, alleged to be on deposit with William E. Story, the defendant's testator, on the 6th day of February, 1875, which sum it was alleged that the said William E. Story had promised and agreed to pay whenever thereunto duly requested so to do.

*Lewis & Moot*, for the appellant.

*Swift & Weaver*, for the respondent.

MARTIN, J.:

The respondent seeks to uphold the recovery in this action primarily on the ground that, in March, 1869, the defendant's testator promised his nephew, William E. Story (to whose rights the plaintiff claims to have succeeded), that if he would not drink, smoke, play cards for money or play billiards until he was twenty-one years of age, he, the testator, would give him $5,000 on that day, and that that transaction constituted a valid and binding contract between the parties which can be enforced against the testator's estate.

Thus, at the threshold of this investigation, we are presented with the broad question, whether what occurred at that time amounted to a valid and binding contract. The nature and character of this transaction will, perhaps, be better understood if we here group the evidence as to what was said and done by the parties. The testimony introduced by the plaintiff was to the effect that, in March, 1869, when the testator and William E. Story were attending the golden wedding of the father of the testator, he said to William, " Willie, I am going to make you a proposition. Willie told him he would like to hear it;" that the testator then said, " If you will not drink any liquor, will not smoke, will not play cards or billiards until you are twenty-one, I will *give* you five thousand dollars that day." " Of course, if you want to play for fun, that I don't consider playing cards. Willie said he would endeavor to carry it out, that he would do it." The plaintiff also proved by the witness, Maggie E. Judson, that she was in the employ of William's father from 1864 for five or six years and boarded in the family; that during that time the testator frequently visited there, and during those visits she frequently heard him, when in conversation with the family,

make the statement that he had $5,000 in bank for his nephew, William E. Story, and that on two occasions he made the statement to her that he had $5,000 on deposit in the bank for his little nephew, William E. Story, when he became of age. This witness further testified that she never heard him mention any contract between himself and his nephew. This nephew was only a child then of eight or ten years of age. On cross-examination the witness testified : " Just what he said to me was, I have five thousand dollars on deposit in the bank at interest for Willie when he comes of age. He also said at the same time that when Willie came of age, if everything was favorable, he would start him in business and help him, and he said he thought this five thousand dollars would be something for him to look forward to that would stimulate him to do right ; and if he was steady and industrious this would be a good start, and if he was not, this would be enough for him to squander." The plaintiff also proved that the relations between the testator and his nephew were intimate.

When William became twenty-one years of age he wrote the testator the following letter :

" DEAR UNCLE. — I am twenty-one years old to-day and I am now my own boss, and I believe, according to agreement, that there is due me $5,000. I have lived up to the contract to the letter in every sense of the word."

The testator's reply to this letter, so far as material to the questions involved in this case, was as follows :

" BUFFALO, *February* 26, 1875.
" W. E. STORY, Jr. :

" DEAR NEPHEW. — Your letter of the thirty-first ult. came to hand all right saying you had lived up to the promise made to me several years ago. I have no doubt but what you have, for which you shall have $5,000 as I promised you. I had the money in the bank the day you were twenty-one years old that I intended for you, and you shall have the money certain. Now, Willie, I do not intend to interfere with this money in any way until I think you are capable of taking care of it, and the sooner that time comes the better it will please me ; I would hate very much to have you start out in some adventure that you thought all right and lose this money in one year. The first $5,000 I got together cost me a heap of hard

work. \* \* \* Willie, you are twenty-one and you have many a thing to learn yet. This money you have earned much easier than I did, besides acquiring good habits at the same time, and you are quite welcome to the money; hope you will make good use of it. I was ten long years getting this together after I was your age. Now, hoping this will be satisfactory, I stop. \* \* \*

" P. S. You can consider this money on interest."

From this evidence can it be properly said that there was a valid contract between the parties by which the testator became legally bound to pay William E. Story $5,000 when he became twenty-one years of age if he refrained until that time from indulging in the habits mentioned? The appellant claims not. His contention is, that what occurred between the parties did not amount to and was not understood or intended by them as a legal and binding contract, but that it was simply a promise by the testator to make his nephew a gift of the sum of $5,000 when he became twenty-one years of age if he should abstain from the evil and unnecessary habits referred to. The evidence, we think, shows that such was the nature and effect of that transaction.

The promise of the testator, as testified to by the plaintiff's witnesses, was that, if his nephew would refrain from smoking, drinking and gambling during his minority, he would *give* him $5,000 on the day he became of age. It will be observed that this promise was not that he would pay him that amount for any service to be performed for the testator, but that he would give him that amount as a gratuity, as an incentive to his nephew to become a sober and worthy man, free from evil and useless habits. In its ordinary and familiar signification the word " give " means to transfer gratuitously, without any equivalent. Presumably, the word was used in that sense by the testator. Unless the evidence shows that it was used in some other sense, its ordinary signification should be given it. We find no sufficient evidence in this case to hold that the word. " give " was used otherwise than in its ordinary sense. The evidence of the witness Judson shows that when Willie was a child only eight or ten years of age the testator contemplated making him a gift of that sum when he became of age, and that he frequently mentioned his purpose in the family of his brother, and that he also contemplated starting him in business at that time if everything was favor-

able. Thus the purpose of the testator would seem not to have been a new one arising at that time, but one which had existed for years, and which was known to the family. This witness also testified that this contemplated gift was not only a subject of frequent conversation between the testator and his brother's family, but that he conversed with her in relation to it upon at least two occasions, and still she never heard anything about any contract between the testator and William. This testimony tends to sustain the appellant's claim that the arrangement between the parties was in the nature of a promised gift by the testator.

But it may be said that the correspondence between the parties when William became of age tends to show that the arrangement was as claimed by the respondent. It is true that William, in his letter to the testator, refers to the arrangement between them as an agreement or contract, and states that he believes there is his due $5,000, but in the testator's reply to that letter he mentions the $5,000 only as a sum which he had promised to his nephew. In this letter there is nothing reflecting any light upon the original transaction which shows that the testator recognized any legal liability or binding contract upon which he regarded himself as indebted to his nephew. On the contrary, the testator's letter is inconsistent with that idea, for, after stating that he had the money in the bank that he *intended* for him (William), and after he again promised that he should have it, the testator states unqualifiedly that he does not intend to interfere with this money in any way until he thinks William capable of taking care of it. Thus the testator, instead of recognizing any legal liability to pay the money when William became twenty-one years of age, treated the matter just as he doubtless understood it, as a promise to make a gift at that time, and he then, in effect, refused to perfect the gift by delivery, but insisted upon retaining it under his own dominion and control until he should think William capable of taking care of it. When this letter was received by William the evidence fails to show that he objected to it, or claimed that he had any right to the money until such time as the testator should see fit to give it to him. This evidence is inconsistent with the existence of a valid contract, and consistent only with the appellant's theory that this transaction was a mere promise to make a gift, and that both parties so regarded it.

We think the transaction between the testator and William E. Story amounted to no more than a promise on the part of the testator that he would give William $5,000 when he became twenty-one years of age if he should prove himself worthy of it by abstaining from certain useless, evil and expensive habits. As was said by ANDREWS, J., in *Beaver* v. *Beaver* (117 N. Y., 428, 429): "The elements necessary to constitute a valid gift are well understood and are not the subject of dispute. There must be on the part of the donor an intent to give, and a delivery of the thing given, to or for the donee, in pursuance of such intent, and on the part of the donee, acceptance. The subject of the gift may be chattels, choses in action, or any form of personal property, and what constitutes a delivery may depend on the nature and situation of the thing given. The delivery may be symbolical or actual, that is, by actually transferring the manual custody of the chattel to the donee, or giving to him the symbol which represents possession. In case of bonds, notes or choses in action, the delivery of the instrument which represents the debt is a gift of the debt, if that is the intention; and so, also, where the debt is that of the donee it may be given, as has been held, by the delivery of a receipt acknowledging payment. (*Westerlo* v. *De Witt*, 36 N. Y., 340; *Gray* v. *Barton*, 55 id., 72; 2 Schouler on Pers. Prop., § 66 *et seq.*) The acceptance, also, may be implied where the gift, otherwise complete, is beneficial to the donee. But delivery by the donor, either actual or constructive, operating to divest the donor of possession of and dominion over the thing, is a constant and essential factor in every transaction which takes effect as a completed gift. Anything short of this strips it of the quality of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title. The intention to give is often established by most satisfactory evidence, although the gift fails. Instruments may be ever so formally executed by the donor, purporting to transfer title to the donee, or there may be the most explicit declaration of an intention to give, or of an actual present gift, yet unless there is delivery the intention is defeated. Several cases of this kind have been recently considered by this court. (*Young* v. *Young*, 80 N. Y., 438; *Jackson* v. *Twenty-third St. Ry. Co.*, 88 id., 520; *In re Crawford*, 113 id., 560.)" Therefore,

as the gift in this case was not completed by a delivery of the subject of it, it was invalid and could not form the basis of a recovery in this action.

If, however, it could be held that the transaction between the testator and William E. Story was intended by the parties as a valid agreement by the testator to pay his nephew $5,000 to induce him to abstain from smoking, drinking and gambling until he was twenty-one years of age, still it would be very difficult to discover any sufficient consideration to uphold such an agreement. There was doubtless a motive for this promise, but was there a consideration? There are many motives which may induce an agreement which do not furnish sufficient consideration to uphold it. It may be that the testator was morally bound to keep his promise, but a gratuitous promise, not under seal, however strong may be the motives, or even the moral duty on which it rests, will not be enforced by courts of justice. The doctrine that a moral obligation may become legally binding through an express promise, though formerly held in England and in the United States, has since been generally repudiated, except in Pennsylvania. That doctrine now forms no part of the jurisprudence of this State. Only a valuable consideration will uphold an executory contract. The consideration must be something of value, something either beneficial to one party or disadvantageous to the other in a pecuniary sense. How can it be said that William E. Story has performed any act which was in any pecuniary sense either beneficial to the testator or disadvantageous to himself by abstaining from habits which would have been not only expensive, but which were unnecessary and evil in their tendency?

The only case cited by the respondent which tends to give the slightest countenance to the doctrine contended for is that of *Shadwell* v. *Shadwell* (9 C. B. [N. S.] 169), but that case is clearly distinguishable from this. The decision in that case may well be sustained upon the ground that the plaintiff made a material change in his position and incurred additional pecuniary liabilities. While in the case cited it might be said that the nephew changed his position by his marriage, and thus incurred additional pecuniary liabilities at the request of his uncle, such is not the case at bar. If the nephew in this case changed his position by abstaining from

expensive habits which could in no way benefit him, it did not in any way add to his pecuniary liability, but could only have resulted to his pecuniary benefit. We doubt if there was any sufficient consideration to uphold an agreement between the testator and his nephew, even if the transaction between them were to be regarded as such.

Again, if it were admitted that this agreement was intended as a contract between the parties, and not as a gift, and that the consideration was sufficient to uphold it, still the plaintiff's right of recovery would be barred by the statute of limitations. If there was a contract between the parties, it was that the testator should pay his nephew $5,000 when he became twenty-one years of age. If this claim was ever due, it became due at that time. It was then that William demanded it, and the testator, in effect, declined to pay it until such time as he should think William capable of taking care of it. If William ever had a cause of action against the testator, it arose when he became twenty-one years of age and more than twelve years before the commencement of this action.

But it is claimed by the respondent that the letter of the testator, interpreted in the light of the surrounding circumstances, established a trust in favor of William and made the testator a trustee of the sum of $5,000 which he had promised William. The case of *Martin* v. *Funk* (75 N. Y., 134) and kindred cases are relied upon as sustaining that claim. The cases cited are to the effect that where a trust is declared, whether in a third person or in the donor, it is not essential that the property should be possessed by the *cestui que trust*, or that the latter should be informed of the trust.

It will be seen, by an examination of the cases relied upon, that they were cases where there was an unequivocal declaration of a trust. In the case at bar there was no declaration of a trust either by the testator's letter or otherwise. There was no evidence in the case that the testator ever deposited any money in the bank in the name of his nephew, or that he ever deposited any in his own name as trustee for him. The letters and other proof were, at most, to the effect that the testator had money in the bank that he *intended* for William, with which he did not propose to interfere until he thought William capable of taking care of it, but that William could consider the money on interest. This evidence falls far short of the

requirements necessary to create a valid trust, even under the authorities cited by the respondent. As was further said by ANDREWS, J., in *Beaver* v. *Beaver* (*supra*), which was a case somewhat similar to this : " To constitute a trust there must be either an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created. It would introduce a dangerous instability of titles if anything less was required, or if a voluntary trust *inter vivos* could be established in the absence of express words, by circumstances capable of another construction, or consistent with a different intention." (See, also, *Young* v. *Young*, 80 N. Y., 422; *Hone* v. *De Peyster*, 3 How. Pr. [N. S.], 422; S. C., 103 N. Y., 662; *In re Crawford*, 113 id., 560.)

We are unable to discover any ground upon which it can be held that the testator intended to establish a trust in favor of William, or to constitute himself a trustee of the $5,000 in question. It seems to us that the evidence, at most, discloses an unexecuted promise by the testator to give William $5,000 when he became of age, if he proved himself worthy of it, and that, upon his attaining his majority, the testator again promised to make the same gift, with the addition of the interest, when he should consider his nephew capable of taking care of it. As there was in this case neither an express declaration of a trust, nor circumstances which show that a trust was intended, it follows that the recovery in this action cannot be sustained upon that ground.

Moreover, the evidence in this case is far from satisfactory. It tends to show quite clearly that the testator, during his lifetime, had fulfilled his promise to his nephew. Soon after the letter of the testator was written we find William engaged in business with his father. He had borrowed $2,500 of the testator, for which he gave his promissory note. Subsequently he, and his father failed in business and were declared bankrupts. In the schedules filed in that proceeding he makes no mention of any claim or debt against the testator, and when required to state any and all money or debts that were due or owing to him, he declared there were none except those which were mentioned, which did not include this claim. He also declared upon his oath that there was no money held in trust for him by any one. After this the testator transferred to William and his father $11,000 worth of goods, for which he received two one

thousand dollar notes and a general release under seal executed by both, which was broad enough to cover this claim.

The plaintiff seeks to avoid the effect of this evidence by proving that the plaintiff's claim had been previously assigned by William to his wife, and that the testator knew of such assignment when the release was given. The credibility of that testimony is materially shaken by the fact that when this action was brought no such assignment was alleged, but the plaintiff alleged in her complaint that she acquired title to this claim directly from William by an assignment made February 3, 1887. The plaintiff's attorney, who drew that complaint, also swears that such an assignment was before him when he drew it. It may be that the assignment was made by William to his wife, as alleged and proved, but it is certainly very remarkable that that fact should have been forgotten by them until the defendant pleaded a release as a defense to this action. It would seem that either William, his wife or the plaintiff, must have remembered the fact, if it existed, either when the claim against the testator's estate was made, verified and presented, or when the original complaint in this action was prepared. Without stating the evidence in further detail, it certainly is not satisfactory to us. In a case like this, where the estate of a dead man is assaulted by dissatisfied relatives, it is the duty of a court to scrutinize the evidence given to sustain such an assault quite carefully, and such a claim should be allowed only upon fair, reliable and consistent evidence, which shows that it is a just one. If there were no other questions in the case except the question whether the plaintiff's claim had been paid and released, we should be inclined to regard it as our duty to grant a new trial upon the ground that the decision was against the weight of evidence. We are, however, of the opinion that there was no legal contract between the parties sufficient to uphold the recovery in this case, and that the judgment should be reversed.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.