EMILY B. VON HESSE, AS ADMINISTRATRIX OF WILLIAM H. MacKAYE, DECEASED, PLAINTIFF, *v.* THEODORA EDITH MacKAYE, RESPONDENT, AND CHRISTIAN VON HESSE, AS EXECUTOR OF JAMES MacKAYE, DECEASED, APPELLANT.

*Trusts — of personal property — grantor retaining the use and control of the trust fund for his life — motive not material.*

In January, 1887, one James MacKaye, who resided in Paris, delivered to his son, William H. MacKaye, ten bonds, and at the same time the son delivered to him a receipt, which stated that the son held the bonds in trust for the adopted daughter of William H. MacKaye, and that during the life of the father the bonds should be subject to his order.

In April, 1887, James MacKaye directed his son to borrow money upon some of the bonds, and at this time returned the receipt to the son with a statement indorsed on it to the effect that he had authorized the loan. Such a loan was made and was subsequently paid by the father.

In January, 1888, he wrote a letter to his son from Paris, in which he stated that his object in placing the bonds in the son's hands in trust was so that the son might swear, if necessary, that he had no property of his father in his possession in case a black-mailer should again attack the father. He, however, reiterated the trust, and his intention to retain during his life power over the bonds. The father died, and a few weeks later the son died.

In an action of interpleader between the adopted daughter and the executor of the estate of the father:

*Held*, that a valid trust was created in favor of the adopted daughter, subject only to the right of the testator to use the bonds or their interest during his lifetime.

That the reservation of their use did not invalidate the trust.

That they went into, and remained in, the possession of the son until his death; were at all times subject to the trust, and were at no time used in a manner inconsistent with it.

That the motive for the trust, to avoid possible black-mail, was not material. (INGRAHAM, J., dissenting.)

APPEAL by the defendant Christian Von Hesse, as executor of James MacKaye, from a judgment, entered after a trial by the court at the New York Circuit, in the office of the clerk of the city and county of New York on the 27th day of April, 1891, establishing a trust in favor of Theodora Edith MacKaye in certain bonds formerly belonging to James MacKaye, and which, at the time of the death of William H. MacKaye, were in his possession, and directing their deposit in a trust company until a trustee was appointed for said Theodora, now an infant.

The court found, among other things:

"*First.* James MacKaye, being the owner of ten Kansas Pacific bonds of $1,000 each, on the 21st day of January, 1887, delivered the same to his son, William H. MacKaye, and took a receipt therefor, signed by said William H., as follows:

New York, *Jany.* 21, 1887.

Rec'd of my father, James McKaye, ten Kansas Pacific bonds of one thousand dollars each, to be held by me in trust for his adopted daughter, Theodora Edith McKaye, and for her sole benefit and behoof, said bonds for, and during his life, to be subject to the order of my father.          (Signed.)        W. H. McKAYE.

*Fifth.* James MacKaye directed said William H. MacKaye to obtain a loan of money on three of the said ten bonds as collateral security, and, subsequently, to pay off the loan and receive the three bonds, which was done.

*Sixth.* All the said ten bonds, together with said receipt, were in the possession of said William H. MacKaye at the death of his father, undisposed of by any order or request of said James MacKaye, and so remained, except three of the said bonds, at the death of the said William H. MacKaye. The seven bonds so remaining are the bonds mentioned in the complaint.

Which said paper writing of January 21, 1887, above set forth, said James MacKaye retained in his possession at Paris, France, until on or about the 18th of January, 1888, when he returned the same by mail to the said William H. MacKaye, and the same remained in the possession of William H. MacKaye until his death, which occurred at the city of New York on or about the 21st of April, 1888, when the same was found among other papers and effects left by the said William H. MacKaye, deceased, by Emily B. Von Hesse, administratrix with the will annexed of the said William H. MacKaye, deceased, and the plaintiff in this action, and the same is now in her possession.

*Tenth.* That after the giving of the receipt of the 21st of January, 1887, by William H. MacKaye, the interest on the said bonds was collected, and some of the bonds were hypothecated for a loan at the instance and by the direction of the said James MacKaye, and such interest and loan were paid to the said James MacKaye.

*George H. Starr*, for the appellant.

*Noah Davis*, special guardian, and *Charles Francis Stone*, for the respondent.

DANIELS, J.:

The testator, James MacKaye, in his lifetime, was the owner of ten Kansas Pacific bonds for the sum of $1,000 each. He resided in Paris, and his son William H. MacKaye resided in the city of New York. And on the 21st of January, 1887, at the instance of the testator, William H. MacKaye executed and transmitted to him a receipt for these bonds, declaring that they were to be held in trust by him for the adopted daughter of James MacKaye, who was Theodora Edith MacKaye, and for her sole benefit and behoof, but which bonds, during the life of the testator, were subject to his order. After his decease and the decease of his son, which followed that of the father very closely, the plaintiff was appointed the administratrix, with the will annexed, of the estate of William H. MacKaye, deceased. And in that capacity she brought this action to settle the title to these bonds which were claimed by Theodora Edith, the adopted daughter, and also by the executor of the estate of James MacKaye. In support of the title of the adopted daughter it was claimed that the receipt which was given for the bonds, then in the possession of William H. MacKaye, created a trust in her favor subject to the right of the executor to use the bonds during his life in case such use should become desirable or necessary. And in April, 1887, at the suggestion of William H. MacKaye, this receipt was returned by the testator, and a copy of it was also transmitted to William H. MacKaye, with a statement subscribed by the testator relative to the use of the bonds, to obtain a loan of $2,000 upon their security for him. This receipt and direction are as follows:

NEW YORK, *Jan'y* 21, 1887.

Rec'd of my father James McKaye, ten Kansas Pacific bonds of one thousand dollars each, to be held by me in trust for his adopted daughter Theodora Edith McKaye, and for her sole benefit and behoof, said bonds for, and during his life, to be subject to the order of my father.      (Signed.)      W. H. McKAYE.

April 1st, 1887, I directed my son W. H. McKaye, to borrow for me $2,000, and to use as a security therefor two of the above mentioned bonds. · J. McKAYE.

In a letter written by the testator relating to these bonds, he stated to his son that the object of placing them in the hands of his son in trust for Edith, was that he might swear, if necessary, that he had no property in his hands belonging to the testator in case a black-mailer should again attack him. In this letter, which was written on the 18th of January, 1888, he added further, that he never meant to part with the right to dispose of the bonds during his life. But as his son seemed to be worried about the receipt given by him, he returned it to him. He then said, however, " But let the understanding between us be that, at all times, any portion of the bonds that may remain in your hands, undisposed of, by my order or request, you hold for the benefit of Edith, and as her guardian and trustee, so that you can, at all times, swear that you have no property of mine in your hands." And by a postscript to the letter he suggested to his son that he should keep a copy of the receipt in his tin box, which he might show if such a thing should be found expedient. On the 27th of September, 1887, he also wrote a letter to his son, stating that he desired, about the middle of October, to draw on him for about $500, $300 of which he would be enabled to reimburse himself for with the coupons on the Kansas Pacific bonds, and the other $200 were expected to be obtained from another source. And in October he did draw upon his son for this sum of money, as he himself said, against the Kansas Pacific bonds, and the $200 expected to be obtained from a Mr. Burwell. In November of the same year, by a letter then written, he referred to a loan of $2,000, and then suggested that if he concluded to borrow the money in London, he would allow the interest money due him to be applied to the payment of that loan, and then the ten bonds would be free, and he could have them sent over to London if necessary. In the letter he further added, that his only hesitation about having the bonds sent to London was that he might want them sent back to New York. And that he would write Mr. Lowrey by the next mail in regard to the trust, and ask his advice about having all the bonds returned to New York.

In December of the same year, by another letter, he also reiterated what he terms to have been his principal object in putting these bonds in trust for Edith. And, then referring to these and other bonds, stated that his idea was to have all the bonds sent to New York to be held under the care of his son in the safe deposit company. In January, 1888, he also wrote to his son that he expected to consult with Mr. Lowrey about a trust deed of the bonds that were in London, and then added, as he had stated before: "As I have already written you, I put the ten bonds you hold in New York in trust for Edith to enable you to swear at all times that you had no property of mine in your hands I did not intend to put the bonds in any such position as that I could not use them during my life, and I do not now believe in any such construction of the receipt." After that he stated further : " I do not want you to feel uneasy about the matter, so as soon as I see Lowrey I will send you another form of receipt so that you shall be relieved of all responsibility under the trust." This was followed by a letter referring to the ability of the son to borrow for the testator the sum of $2,000 on the security of the bonds he had in his hands. He also wrote to Mr. Lowrey in October, 1887, a letter containing the inquiry as to other bonds, "How would it do if my wife were to redeliver to me these bonds, and then that I should put them with those now held by William, in trust for Edith, into the possession of three trustees of which my wife should be one, together with yourself and my son Wm ? "

It is not necessary to consider the admissibility of the statements of the testator, subsequent to the time when the bonds were placed in the hands of his son, as they were stated to have been by the receipt subscribed by him and transmitted to the testator. For throughout the correspondence the trust is substantially acknowledged to have been created as the receipt expressed that to have been the design of the testator. And when this receipt was to be returned the understanding was reiterated in the letter of the 18th of January, 1888, that the bonds were to be held and remain in the hands of the son for the benefit of Edith, as her guardian and trustee. These statements are unequivocal evidence of the intention of the testator to place the bonds in the hands of his son, there to remain for the benefit of this adopted daughter, unless during the lifetime of the testator they should be used by him. And that, in

judgment of law, did create a valid trust for her benefit. (*Jones* v. *Clifton,* 101 U. S., 225, 230.) And to the same effect is the conclusion that was reached in *Van Cott* v. *Prentice* (104 N. Y., 45).

The trust was created for the benefit of this adopted daughter, subject only to the contingency, and the right of the testator creating it, to use the bonds, or the interest accruing upon them, during his lifetime; and that circumstance, as these authorities settle the law to be, did not invalidate the trust. It is true that possession of the bonds by the trustee was essential to the creation of the trust, as that was substantially held in *Martin* v. *Funk* (75 N. Y., 134); *Phipard* v. *Phipard* (55 Hun, 433), and in the *Matter of Crawford* (113 N. Y., 560); *Jackson* v. *Twenty-third Street, etc., Railway Company* (88 id., 520); *Young* v. *Young* (80 id., 430). But all that these authorities require to create a legal gift of the bonds in trust was established by the evidence, for they went into the possession of William H. MacKaye, the trustee, and remained subject to his control, and the declaration of trust contained in the receipt, up to the time of his own decease. They were at no time removed from that possession with a view of abrogating the trust, and at no time used for the benefit of the testator in such a manner as to be inconsistent with its existence.

After the decease of the testator three of the bonds were used to provide the sum of $3,000 for the embalmment of his body, and its return to and burial in the State of New York. This evidence was objected to on behalf of the executor; but, inasmuch as it was no part of the design of the evidence to create a demand against him for the amount of the bonds which had been so used, the exception became entirely unimportant. What was claimed in behalf of the beneficiary, the adopted daughter of the testator, was that she should be assured the title to the seven bonds which afterwards remained. And as no claim was made or included in the judgment for the three bonds, or any part of their proceeds, the executor was in no manner injured by the production of this evidence.

The uncontradicted evidence given upon the trial, as well as that contained in the letters of the testator, proved the fact to be that he not only intended, but did create, a trust for the benefit of his adopted daughter in these bonds. They were in the possession of his son, subject to that declaration and arrangement; and the motive

he had for placing them subject to this trust was of no controlling importance in the case. Even if he did design, by means of the trust, to place his son in a position where he could swear that he had no property of the testator in his hands, and that was a leading object he had in view, still, as he did create a trust for the benefit of this adopted daughter, it was legal and valid, notwithstanding the existence of this motive or inducement. And as the bonds, to the extent of seven, remained subject to the trust at the time of the decease of the testator, the title to them, as the beneficiary of the trust, vested in the adopted daughter Theodora Edith.

The judgment from which the appeal has been taken should be affirmed, with costs.

VAN BRUNT, P. J., concurred.

INGRAHAM, J. (dissenting):

I think the evidence in this case fails to show a delivery of the bonds to William H. MacKaye, as trustee, sufficient to sustain a gift. There is no evidence as to the circumstances under which the bonds were delivered to William H. MacKaye; all that appears is that, at the time of his death, they were in his possession, and there was also in his possession a receipt which he appears to have given to his father, but which had been subsequently delivered by his father to him, whereby he stated that he received from the father the bonds to be held in trust for the defendant, Theodora Edith MacKaye, for her sole use and benefit and behoof, and which then contained the following provision: "Said bonds for and during his life to be subject to the order of my father."

It does appear that the testator used the interest on the bonds during his life, and never parted with the right to control their use. He appears to have exercised all acts of ownership, and to have treated the bonds as his own property.

In *Jackson* v. *Twenty-third Street Railroad Company* (88 N. Y., 526), the court says: "The delivery must be such as to vest the donee with the control and dominion over the property, and to absolutely divest the donor of his dominion and control, and the delivery must be made with the intent to vest the title of the property in the donee."

The terms of the receipt given would indicate that there was no intention of the testator to divest himself of the dominion and control of the bonds, and his statements, acts and declarations, if they are admissible at all, as against the respondent, all tend to show that he never did intend to divest himself of the ownership of the bonds, or of the power to use and control them in any way he saw fit.

I am unable, therefore, to concur in the affirmance of this judgment.

Judgment affirmed, with costs.