In re HOLMES.

(Supreme Court, Appellate Division, Third Department. January 14, 1903.)

1. HUSBAND AND WIFE—GIFTS.
    Where a husband deposited money to his wife's credit and delivered the bank book to her, and she signified her acceptance by drawing several checks against the account, it became an absolute and irrevocable gift.

2. DEED OR MORTGAGE—EVIDENCE—SUFFICIENCY.
    Evidence examined, and *held* insufficient to show that a deed from a husband to a wife, absolute on its face, was intended as a mortgage.

3. SAME.
    A contention that a deed absolute on its face was intended as a mortgage must be established by clear and satisfactory evidence.

4. BANK DEPOSIT—OWNERSHIP.
    The fact that a wife in feeble health, living a considerable distance from town, gave her husband authority to draw against her account at the bank, did not constitute them owners in common of the fund.

5. EXECUTOR—ACCOUNTING—PERSONAL COSTS.
    In a proceeding to settle the account of an executor, the surrogate court had authority to charge him personally with costs in favor of the guardians ad litem.

Appeal from surrogate's court, Chenango county.

Proceeding to settle the account of William S. Holmes, as executor of Mary E. Holmes, deceased. From a decree determining

¶ 3. See Mortgages, vol. 35, Cent. Dig. § 109.

the ownership of a fund adversely to the executor, he appeals. Affirmed.

Argued before PARKER, P. J., and KELLOGG, SMITH, CHASE, and CHESTER, JJ.

Edmund B. Jenks, for appellant.

E. E. Mellon, for Gutches and others, respondents.

Nelson P. Bonney, special guardian, in pro. per.

CHESTER, J. The appellant was the husband of the deceased and one of the executors of her will. They were married in 1888. At that time she was a widow, and he well advanced in life. Each then had a small estate. She died in 1897, leaving a deposit in an account in her name in the Binghamton Trust Company, amounting to $1,887.02. This account was opened February 27, 1893, by a deposit of $500 to her credit. The only other deposit in this account was one of $1,700, April 20, 1896. There were no other credits except items of interest. At about the time the deposit of $1,700 was made, Mrs. Holmes wrote in the bank book to the trust company: "Please fix this book so Mr. Holmes can draw it out as well as myself." The cashier thereupon wrote upon the bank book, "W. S. Holmes may draw." The bank book was usually kept by Mrs. Holmes in her safe in the store of her brother, William H. Burnap, who was also one of the executors of her will, and it was there at the time of her death. There is no proof, other than the testimony of Holmes, that it was ever in his possession, except when he took it to the bank when he went to deposit or withdraw money. On April 22, 1897, after the death of his wife, Holmes procured the bank book, drew out the entire amount of this account, and applied it to his own use. Upon his accounting as her executor, he did not include this item in his accounts, and a legatee filed objections thereto, claiming that he should be charged with it. The surrogate's court decided that it belonged to the estate of his widow, and charged his account with the $1,887.02, and with the interest thereon from April 12, 1898,—the time when it should have been paid to the legatees under the will,—amounting to $405.70. He was also charged with certain costs to be paid by him personally. From the decree entered upon that decision, this appeal is taken. The whole controversy is as to the ownership of this fund, and as to the direction concerning costs.

The claim of Holmes is that, notwithstanding the deposit was in his wife's name, only $300 of it ever belonged to her; that she had withdrawn that sum and invested it in a mortgage, and that the entire balance belonged to him.

As to the deposit of $500, Holmes testified that $200 of it was his, and $300 his wife's. There was no testimony either in corroboration or denial of this statement, except the testimony of several witnesses to declarations of Mrs. Holmes, in presence of her husband, that the whole fund was hers. Assuming, however, the truth of the testimony of Holmes that the $200 belonged to him, by depositing it as he did in an account to her credit and delivering the bank book to

her, followed by her drawing several checks against the account, as
the proof shows she did, signifying her acceptance of the fund, he
made an absolute and irrevocable gift of it to her. People v. State
Bank of Ft. Edward, 36 Hun, 607, affirmed 102 N. Y. 740; In re
Crawford, 113 N. Y. 560, 21 N. E. 692, 5 L. R. A. 71.

As to the $1,700 deposit, the proof shows that on April 18, 1896,
Mrs. Holmes conveyed to one Allen property standing in her name
valued at $3,500, and received from Allen in exchange a conveyance
of property valued at $1,700. The difference, $1,800, was paid by
Allen, $25 in cash and $1,775 in a check. This check was taken by
Holmes to the Binghamton Trust Company, where he received $75
in cash, and deposited the balance, $1,700, to the credit of his wife in
the account above mentioned. Holmes insists that his wife held the
deed of the property which she conveyed to Allen, as security for
$1,400 or $1,500 which she had loaned to Holmes, and that that loan
had been paid, so that, when the exchange was made, the money
received for the difference in value between the two properties be-
longed to him and not to his wife. To support this contention, he
had the testimony of the scrivener who drew the deed, but the cred-
ibility of this witness was impeached by six of his neighbors. While
it is competent in this state to show by parol or other extrinsic evi-
dence that a deed absolute on its face was intended as a mortgage
(Horn v. Keteltas, 46 N. Y. 605), yet the burden of proof in this re-
spect was upon the appellant, and he was bound to establish his con-
tention by clear and satisfactory evidence. Haussknecht v. Smith, 11
App. Div. 185, 42 N. Y. Supp. 611, affirmed in 161 N. Y. 663, 57
N. E. 1112; Wilson v. Parshall, 129 N. Y. 223, 29 N. E. 297. I fail
to find evidence of this character on this question in this record, and
I think the learned surrogate was fully justified in not giving credit
to the testimony which was given.

The fact that Mrs. Holmes gave her husband authority to draw
against the account in question does not, in my opinion, affect her
ownership of it under the circumstances appearing here, nor did it
constitute them owners in common of the fund. The account still
remained in her name alone, and the bank was still debtor to her
and not to him. The case is to be distinguished from those where
the deposit is made to the credit of two persons, with a permission
to either to draw. Mrs. Holmes lived a considerable distance from
Binghamton, where the bank was located, and was in feeble health.
One witness testified that she said she had the book fixed so Holmes
could draw the money out for her, as she didn't want to go to
Binghamton every time she wanted money to use. This being so,
the arrangement was purely for her convenience, and by it he was
simply constituted her agent, and this agency ceased at the time of
her death.

The question as to the ownership of this fund was one of fact under
the proofs, and it was decided adversely to the contention of the
appellant by the surrogate's court upon sufficient evidence. No good
reason appears for disturbing the conclusion there reached.

The determination charging the appellant personally with costs in
favor of the guardians ad litem was within the discretion of the sur-

rogate's court, and the discretion was properly exercised upon the facts appearing here.

The decree should be affirmed, with costs.

Order affirmed, with $10 costs and disbursements.   All concur.