### In re CONDON.

(Circuit Court of Appeals, Second Circuit. April 8, 1912.)

#### No. 196.

BANKRUPTCY (§ 140*)—PROPERTY—OWNERSHIP.

S. having borrowed $11,000 from a bank and deposited certain mining stock as collateral, and the bankrupt desiring to purchase the stock for his son, procured a substitution of the son's note for that of S. to the order of the bank accompanied by the stock as collateral, with authority to the bank to sell the stock in case of nonpayment of the note, payment of which the bankrupt guaranteed in writing. Thereafter the bankrupt paid the note which was canceled by the bank as paid in full by the son, and the collateral was returned to the bankrupt who put it in his safe in an envelope indorsed, "Property of" the son. Bankruptcy proceedings having been instituted, the temporary receiver demanded the surrender of another certificate of an equal number of shares belonging to the bankrupt, and this certificate being in the hands of another, the bankrupt delivered the son's certificate, stating that he would thereafter obtain his own and give it to his son. *Held,* that the title to the stock purchased from S. was in the son, and not in the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

Petition to Revise and Appeal from the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy proceedings against Martin J. Condon. On petition of Martin J. Condon, Jr., to revise an order denying his application for a delivery of certain stock in the possession of a receiver as the property of the alleged bankrupt. Reversed.

Henry G. K. Heath, for appellant.

Hiram Barney and Tompkins McIlvaine, for appellee.

Before COXE, WARD, and NOYES, Circuit Judges.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WARD, Circuit Judge. This is a reclamation proceeding by Martin J. Condon, Jr., for 40,000 shares of the capital stock of the San Cristobal Mining Company in the hands of the temporary receiver of the alleged bankrupt, Martin J. Condon, Sr. One Starbuck had borrowed $11,000 of the Third National Bank of Knoxville, Tenn., against his note to the bank for that amount, accompanied by certificates for the stock in question in his name and by him indorsed in blank.

Condon, Sr., testified that his son asked him to buy this stock for him, and he agreed to do so with the view of interesting his son in some business. The sale was accomplished in this way. Condon, Jr., in substitution for Starbuck's note, gave his own note, dated June 11, 1908, for $11,000 to the order of the bank accompanied by the stock in question as collateral, with authority to the bank to sell the same in case of nonpayment of the note. Condon, Sr., guaranteed the payment of the note in writing upon the back of it.

If the bank were out of the case and Condon, Sr., had given Starbuck $11,000 with the request that he, Starbuck, deliver the stock in question to Condon, Jr., there could be no pretense that Condon, Sr., ever owned the stock or did anything else than pay for it on account of his son, or if, instead of giving him $11,000 in cash, he had given him his son's note for $11,000 and guaranteed the payment of it, the result would have been the same. The fact that the stock was pledged to a bank, and in its possession, does not alter the real nature of the transaction. When the bank accepted Condon, Jr.'s, collateral note in place of Starbuck's, with authority from Condon, Jr., to sell the collateral in case of nonpayment of the note, Condon, Jr., must be taken to have been the owner of the stock. The delivery of the stock was from Starbuck to Condon, Jr., and not to Condon, Sr. This accords with the testimony of both father and son.

October 25, 1909, Condon, Sr., paid the note, which was canceled by the bank as paid in full by Condon, Jr., and the collateral returned to Condon, Sr., who put it in his safe in an envelope indorsed, "Property of Martin J. Condon, Jr."; the son having no appropriate place in which to keep it. If Condon, Sr., as between himself and his son, paid the note by virtue of his guaranty, he would be subrogated to the rights of the bank, and could hold the collateral to secure repayment from his son. But this is totally at variance with the proofs, which are to the effect that he paid the note for the purpose of protecting his son's title. The fact that the bank returned the stock to Condon, Sr., and that he put it in his safe, can in no way affect the title which had previously vested in Condon, Jr.

April 11, 1911, an involuntary petition in bankruptcy having been filed against Condon, Sr., the temporary receiver called upon him to surrender another certificate of 40,000 shares of the San Cristobal Mining Company belonging to him. He said this certificate was in the hands of one Taylor, who was arranging for the sale of the property under an option, and that he would save the receiver trouble by giving him his son's stock in place of his own, and then get his own stock from Taylor and give it to his son. In point of fact, the re-

ceiver subsequently obtained Condon, Sr.'s, stock from Taylor and refused to deliver the stock in question to Condon, Jr.

The District Judge denied Condon, Jr.'s, petition on the ground that the evidence showed a gift from the alleged bankrupt to his son, unexecuted for want of delivery. He assumed that Condon, Sr., was the owner of the stock. We think, on the contrary, that the facts show that Condon, Sr., never owned the stock at all, although he gave his credit to enable his son to get the stock. In this view of the case the authorities relied upon by the District Judge as to unexecuted gifts, Trow v. Shannon, 78 N. Y. 446, and Matter of Crawford, 113 N. Y. 560, 21 N. E. 692, 5 L. R. A. 71, have no application. The order is reversed with costs.