RATHBUN *vs.* RATHBUN.

The delivery of a deed to the county clerk, for record, and for the use of the grantee, is a perfect delivery by the grantor; and upon an acceptance of such deed by the grantee, it takes effect from the time of such delivery.

Parol evidence will not be received for the purpose of engrafting upon a deed any condition, limitation, or reservation inconsistent with its terms.

Accordingly, *held* that a *trust* could not be established between the grantor and grantee in a deed absolute on its face, by evidence of a parol message sent to the grantee, by the grantor, *after* the delivery of the deed, informing him of such delivery and expressing a hope that the grantee would take the property and

sell it to pay the grantor's debts, and that if there was any balance left, the grantee would let him have it in money, or lands in some other place; such message not being simultaneous with the delivery of the deed, and a part of the same transaction, and the messenger not being the agent of the grantor, and no assent or dissent on the part of the grantee to the terms and conditions mentioned being required.

The confessions and declarations of parties are always received with distrust, and should be closely scrutinized. *Per* ALLEN, J.

Under the statute of frauds parol evidence is inadmissible to establish a trust respecting real estate. And the doctrine of part performance will not be applied, and held to take such a trust out of the statute.

The acts of part performance which will estop a party from insisting upon the statute of frauds must be on the part of the person asking a performance, and not by the person insisting upon the statute.

To constitute a part performance of a parol agreement which will estop a party from insisting on the statute of frauds, the acts of such party must be so clear, certain, and definite in their object and design, as to refer exclusively to a complete and perfect agreement of which they are a part execution. And they must be a part performance of the precise agreement set up.

The grantor in a deed containing covenants of warranty is estopped from claiming a resulting trust in the premises conveyed, for his own benefit. Even if he might so far explain his own deed as to show a non-payment of the purchase money, he can not, by parol evidence, do away with his covenants of warranty.

Where a deed contains an express declaration that the conveyance is for the use of the grantee, and it is made for a good and valuable consideration, there can be no implied or resulting use or trust in favor of the grantor.

IN EQUITY. This was an appeal from a decree of the late ·vice chancellor of the fifth circuit, dismissing the plaintiff's bill, but without costs to either party. The bill alleged that on the 16th of July, 1828, the plaintiff owned the undivided two thirds of a farm of about 300 acres in Warren, Herkimer county. That his father, the defendant, owned the other one third of the premises, the same having, on that day, been conveyed to him by the plaintiff in satisfaction of the bond of the plaintiff secured by a mortgage on the whole premises. That on the 19th of September, 1829, the plaintiff finding himself embarrassed, in order to facilitate the payment of his debts, assigned all his estate both real and personal to the defendant, in trust, to sell the same and from the proceeds of the sale to pay and satisfy all the debts the plaintiff was then owing, or had contracted, whether then due or not, and without giving a preference to any whose

Rathbun *v.* Rathbun.

demands had become due as to time of payment, and others not due to be paid when due ; and that the defendant was to make immediate sales of the trust property, and pay up the debts as fast as reasonably could be done, and what trust property there should be remaining after paying all the debts of the plaintiff, and deducting all the costs and expenses of executing the trust, the defendant was to pay to the plaintiff in cash or in land. The bill further charged, that in order to vest the defendant with the title to the real estate, to enable him to execute the trust, the plaintiff and his wife executed a warranty deed of the premises to him for the consideration, as stated in the deed, of $4000, and that the consideration was inserted as a matter of form, and was never in fact paid. That the defendant accepted the trust, and took possession of the real and personal property, and sold the real estate in parcels and received the pay therefor. That the personal property was worth $1500, and that he paid debts of the plaintiff to the amount of about $1500. The bill prayed an account, &c. and that the defendant might be decreed to pay to the plaintiff what should be found due him upon such accounting, &c.

The answer alleged that for some time previous to January 1, 1825, the defendant had been the owner, in fee simple, of the entire farm, and that upon the farm was a large and valuable personal property, consisting of farming utensils, horses, wagons, stock, &c. and that about that time he conveyed to his son, the plaintiff, who had a few months before arrived at the age of 21 years, the farm, which was actually and reasonably worth $6500, and took from him a mortgage for $2500, in payment of which he afterwards received a reconveyance of one third of the farm as stated in the bill, and that it was understood and agreed that the residue of the value of the farm, viz. $4000, should be allowed and accounted for by the plaintiff as received of the defendant, on a final settlement of the affairs of the de-fendant, and in the division of his property among his children. That the plaintiff thereupon took possession of the farm and all the personal property upon it, but neglected the farm and suf-fered the fences and buildings to decay, cut and sold valuable

Rathbun *v.* Rathbun.

timber, and became embarrassed by debts contracted by him. That on the 19th of Sept. 1829, he conveyed the two thirds of the premises, of which he still held the title, to the defendant, by deed containing the usual covenant of warranty. The defendant denied all trusts, or that there was any agreement, express or implied, that the lands were conveyed to, or were to be held by him in trust, for any purpose, or that he took such conveyance on any other terms than as payment for the $4000 due him. The answer further alledged that about the 21st of September, 1829, the defendant was informed that the plaintiff had left Herkimer county, and did not intend to return; that he had left a large amount of debts unpaid, and that he desired the defendant to take his personal property and convert the same to the payment of his debts. That he thereupon went to his residence, and found that attachments to a large amount had been levied upon the plaintiff's property, and to an amount greater than the whole value of the property, and that he took the property and advanced the money and paid the debts of the plaintiff. It was proved, and conceded by the counsel, that the debts of the plaintiff, paid by the defendant, exceeded the value of the personal property of the plaintiff. The proofs showed that the farm had been conveyed by the defendant to the plaintiff at the time stated in the answer, and that the only consideration for the conveyance was the bond and mortgage of the plaintiff for a part of the value, and in satisfaction of which the one third was afterwards reconveyed to the defendant. The plaintiff proved by one witness (Ely) that he was with the plaintiff at the office of the clerk of Herkimer county in Sept. 1829, about the time he went away, and that the plaintiff told him to go and tell his father to take his property and sell it to pay his debts, and after taking out his trouble, if there was any balance, to let him have it in money or land in some other place; that this was on Saturday, and that he saw the defendant on Monday following, and the witness added, "I think I told Benjamin Rathbun the news. I think I told him there was a deed left for him in the clerk's office at Herkimer. I think I told him that Charles had executed the deed to him of his farm. I

do not recollect of saying any thing to him about the personal property. The language of Charles (the plaintiff) was, to take his property, to dispose of it to the best advantage, and pay his debts." Soon after this the defendant took possession of the property. It was proved by another witness that Ely, about the time of the transaction, had given a different account of it. The plaintiff also attempted to establish the trust by declarations of his father made in 1841, in a conversation had between him and his father in the presence of a witness by the name of Webb. Other witnesses present at the same conversation gave a different version of it from Webb. Other evidence in the case was given as to the value and condition of the property and the payment of the debts of the plaintiff, by the defendant, and the disposal by the latter of the property.

*J. Ruger*, for the appellant.

*H. Denio*, for the respondent.

*By the Court*, ALLEN, J. The evidence relied upon to establish a trust in this case, if admissible at all, is very slight, and entirely insufficient for that purpose.

I. The transaction is susceptible of a very easy and satisfactory explanation without reference to a purchase of the premises by the defendant, or the creation of a trust for the benefit of the plaintiff of the character of that set up in the bill. The plaintiff had but a very short period before received the title to the property from the defendant, his father, by way of advancement, and after an experiment of some three or four years, found himself embarrassed to that extent that he deemed it necessary to abandon the property and his residence ; and it was very natural, as it was highly proper, that he should reconvey so much of the property as he had not squandered, and of which he had proved himself so improvident a manager, to the defendant from whose bounty he had received it. The consideration was ample as between the parties to the deed, and of a character which commends itself to the favor of this court. The presumption

Rathbun *v.* Rathbun.

that such was the character of the transaction· (I speak now without reference to the testimony of Ely and Webb) is strengthened by the fact that without any interview with the defendant, and of his own volition, the plaintiff executed, acknowledged, and delivered to the clerk of Herkimer county for record, and for the use of his father, a deed of the premises, unconditional in its terms and without any condition annexed to its delivery. Its delivery to the clerk of the county for the use of the defendant was a perfect delivery by the plaintiff; and upon acceptance by the defendant the deed took effect from the time of such delivery. (*Elsey* v. *Metcalf*, 1 *Denio*, 323.)

II. The evidence of Ely, which is relied upon to rebut the presumption arising out of the relation of the parties and their situation and history in respect to the property in question, is liable to the remarks; (1.) That it is the statement of a conversation in which the precise words used, or at least words of the very same import, are very material to a right understanding of the case made over twelve years after the conversation took place ; and it would be wonderful indeed if the witness has recollected the language used upon that occasion, so that he can convey at this time the same idea which the parties then designed to convey by their language.· And if his testimony was positive, full, direct and certain, a court should hesitate long, even if no statutory provision stood in the way, before giving effect to it, in opposition to the plain tenor of the deed of the party, and which has been acquiesced in for twelve years. It would not be discreet to make a decree upon evidence of this unsatisfactory character. (2.) The message delivered to him for the defendant was *after* the deed had been delivered to the clerk for the defendant. It was not simultaneous with such delivery, and a part of the same transaction : neither was the witness constituted the agent of the plaintiff, for any purpose. The assent or dissent of the father to any suggestions or conditions of the plaintiff were not to be communicated to the latter, and were not to affect the validity of the deed or the conduct of the plaintiff, tending most strongly to show that the conveyance to the defendant was a mere return of the bounty the plaintiff had be-

Rathbun v. Rathbun.

fore received from his father. (3.) The message now said by the witness to have been delivered to him by the plaintiff, for the defendant, was not to the effect that the property had been conveyed to the latter upon any trust, or upon any conditions, but was merely a notice of the fact that a conveyance had been executed and delivered, leaving the conveyance to speak for itself, and a request in the nature of an appeal to the future bounty of the father, to let him have what, if any thing, should be left after the payment of the debts, in such form as the defendant should see fit—no provision or condition that in any event any part of the specific property should be reconveyed to the grantor. The conveyance was intended to be, as it was, absolute. (4.) There is no evidence that that part of the message relating to the payment to the plaintiff of the avails of any part of the property was ever delivered to the defendant. The witness says he told the defendant the "news," that is, that his son had conveyed the property to him, the defendant, and had absconded. (5.) The credit to be given to the testimony of this witness is greatly diminished by the evidence of Belknap, showing that soon after the transaction, and when we may suppose his recollection was distinct, he gave an entirely different version of the affair, and one entirely inconsistent with the creation or existence of a trust. It is true the evidence of Belknap does not establish, or tend to establish, the true character of the transaction; but it does establish the fact that the testimony of Ely can not safely be relied upon at this time to effect the transfer of a valuable property from the defendant to the plaintiff. (6.) The evidence of Webb, relied upon to corroborate and confirm the present recollection of Ely, is unworthy of consideration. The interview with the defendant to which he was called to testify was got up and arranged eleven years after the principal transaction, with a view to draw from the old gentleman, the defendant, who was unsuspicious of the design, a confession, or some declaration, or some assent express or implied to some fact which might be construed into an admission of the existence of some trust; and was doubtless managed in a manner calculated to bring about the desired result. And it would have been

Rathbun *v.* Rathbun.

wonderful indeed if they had not found something which they were willing to construe into an admission of the claim of the plaintiff. The confessions and declarations of parties are always received with distrust, and should be closely scrutinized; but when got up as these were, from an unsuspecting old man somewhat deaf, and drawn out by a designing son and noted by a willing if not àn anxious witness, they should have no influence at all in a doubtful case; and it is only in *very* doubtful cases that they would be resorted to. The acts of the old gentleman upon the occasion give the lie to every presumption sought to be drawn from his declarations that he then supposed that the relation of trustee and cestui que trust existed between him and his son in respect to the property in question; for he distinctly refused to acknowledge any claim on the part of the son. The conduct and manner of the witness while under examination, and the pertinacity with which he refused to speak of the interview except from his memorandum, tend still further to detract from the credit to be given to his testimony. The other witnesses present at the same interview give a different version of the conversation and declarations of the parties, and I must say apparently somewhat more natural. The conversation, as related by Webb, is certainly very formal, forced and unnatural, and I may add improbable.

III. But if the plaintiff has succeeded in establishing every fact which he claims to have established by the evidence of Ely and Webb, still he has failed to entitle himself to a decree in his favor. (1.) The evidence is incompetent to engraft upon the deed any condition, limitation, or reservation inconsistent with its terms. (*Webb* v. *Rice,* 1 *Hill,* 606; *S. C. in error,* 6 *Id.* 219. *Swick* v. *Sears,* 1 *Id.* 17.) (2.) Parol evidence was inadmissible to establish a trust. It is provided by 1 *R. L.* 79, § 12, "That all declarations or creations of trusts or confidences of any lands, tenements, or hereditaments shall be manifested and proved by some writing signed by the party who is or shall be by law entitled to declare such trust, or by his last will in writing, or else they shall be utterly void and of none effect."(*a*)

(*a*) See also 2 *R. S.* 137, § 2.

It is not necessary that the writing by which the trust is manifest should be made at the time the trust is created. It is sufficient if it is evidenced by a writing made by the proper party at any time. (*Story's Eq. Jur.* § 972. *Steere* v. *Steere*, 5 *John. Ch. Rep.* 1. *Forster* v. *Hale*, 3 *Vesey*, 696. *Leman* v. *Whitley*, 4 *Russ.* 423. *Jackson* v. *Moore*, 6 *Cowen*, 706.)

IV. But it is insisted that this case is taken out of the statute, by a part performance of the trust by the defendant. There are several difficulties in this part of the plaintiff's case. (1.) I find no case in which the doctrine of part performance has been applied and held to take the case of a trust of real estate out of the statute; and courts have not recently been astute to discover reasons to evade the statute of frauds, and have been unwilling to extend the doctrine of part performance to new cases. (6 *Paige*, 293. *Story's Eq. Jur.* §§ 765, 766. 3 *Vesey*, 712, 713.) (2.) The doctrine of part performance is based upon the principle that it would be inequitable, and a fraud on the part of the individual insisting upon the statute, to rely upon it after having, by his acts, induced his adversary to do acts in part performance of a parol agreement and upon the faith of its full performance by both parties, and for which he cannot well be compensated in any manner except by a specific performance of the agreement; and hence the acts of part performance which are (not to take the case out of the statute but) to estop a party from insisting upon it, must be on the part of the person asking a performance, and not of the person insisting upon the statute. For if the latter chooses to waive the benefit of his acts of part performance, his adversary has no claim for relief founded upon it; and here all the acts of part performance relied upon are the acts of the defendant. (7 *Vesey*, 341. *Roberts on Frauds*, 138. *Story's Eq. Jur.* §§ 759, 761.) (3.) The acts of the defendant, in the payment of the debts, are not necessarily referable to the existence of a trust. Two considerations may have operated to induce him to pay the debts of his son. His relation to the plaintiff might well induce him to pay the debts, and thus save his son from reproach. The consideration for the transfer of the property, although sufficient

to support the transaction, as between the parties, might have been invalid as against the creditors of the grantor; and the payment of the debts may be considered as a part payment of the purchase money. And acts to be deemed a part performance of a parol agreement, so as to estop a party from insisting upon the statute of frauds, should be so clear, certain, and definite in their object and design as to refer exclusively to a complete and perfect agreement of which they are a part execution. (*Story's Eq. Jur.* § 762.) And they must be a part performance of the precise agreement set up. (*Phillips* v. *Thompson,* 1 *John. Ch. Rep.* 131. *Parkhurst* v. *Van Cortlandt, Id.* 273. *German* v. *Machin,* 6 *Paige,* 293.)

V. The plaintiff is not entitled to a decree declaring an implied or resulting trust in his favor in the property transferred, or the proceeds thereof. (1.) Such a decree would be entirely inconsistent with the case made by his bill. It would have to proceed upon the assumption that there had been a sale of the property to the defendant, and that no part of the purchase money had been paid; or that the property had been transferred without consideration and upon trusts which had wholly failed. Either of which positions would directly contradict the entire case made by the bill. A resulting trust for the benefit of the plaintiff is quite another and a different thing from an express trust for the payment of debts; and under an allegation of one, the other can not be established. (1 *Hoff. Ch. Rep.* 49, *and note.*) (2.) The plaintiff is estopped by his deed with covenant warranty from claiming a resulting trust in the premises for his own benefit. Even if he might so far explain his own deed as to show a nonpayment of the purchase money, he can not, by parol evidence, do away with his covenants of warranty. (*Squire* v. *Harder,* 1 *Paige,* 494. *Moran* v. *Hays,* 1 *John. Ch. Rep.* 339.) (3.) There is an express declaration in the deed that the conveyance is for the use of the grantee, and the conveyance was for a good and valuable consideration; and in such a case there can be no implied or resulting use or trust. (*Story's Eq. Jur.* §§ 1197, 1199.) The case of *Leman* v. *Whitley,* (4 *Russ. Rep.* 422,) is cited and relied upon by the plaintiff

Rathbun *v.* Rathbun.

to sustain a claim of a lien for the consideration stated in the deed as for so much purchase money. This case is said by Judge Story to stand upon the utmost limits of the doctrine of the inadmissibility of parol evidence as to resulting trusts. (*Story's Eq. Jur.* 1199, *note* 2.) But there is a manifest distinction between the two cases. That was the case of a naked conveyance to the father, without consideration, and for a particular purpose, which entirely failed by the death of the father; and it was not intended to vest in the father a beneficial interest for any purpose. And if he or those claiming under him should hold under the deed, there was great equity in compelling them to pay the purchase money. But in this case the facts are entirely different, and the claim for the purchase money can not be allowed without directly establishing the trust, which is not evidenced by writing. Again; the bill is not framed with a view to such relief, and it does not at this time require the citation of authorities to the principle that relief can only be granted according to the case made by the bill, as well as by the evidence. The other cases relied upon by the plaintiff were cases of sale, and not of trust. (*Hess* v. *Fox*, 10 *Wend.* 436. *Shepherd* v. *Little*, 14 *John. Rep.* 218.) The claim for an account of the personal property is barred; 1. By the statute of limitations, and 2. By the evidence, as well as the concessions of the counsel upon the argument, that the payment by the defendant for the plaintiff exceeded the value of all the personal property received by him. The decree of the vice chancellor is affirmed, with costs.