Bradbury, J.
The pleadings in the action, together with the findings of the court, show that Mary J. Swan, the defendant in error, in the year 1840, being then about two years old, and living-with her mother, a woman in humble circumstances, near Worthington, Ohio, attracted the notice of James E. Woodbridge and his wife, who resided in Mt. Vernon, Ohio, were in prosperous circumstances, childless, and without expectation of children being born to them; that the Woodbridges, then visiting at Worthington, entered into negotiations with the mother respecting her said child, which resulted in the' mother yielding to them the person of the child, and their carrying her home with them on their return; that they gave their name to the infant, and entered in their family Bible her birth, as their own offspring; that they reared her tenderly, taught her to believe that she was their child by birth, and carefully educated her; that when she reached a suitable age they introduced her into society as their own daughter; that she was an affectionate and dutiful child, and in all respects discharged the duties of a daughter, and continued to reside in the family until her marriage, at which ceremony she was given away by James E. Woodbridge as his daughter; that in August, 1874, James E. Woodbridge died intestate, having made no provision for the defendant in error, and his property, real and personal, passed to his wife who survived him a few months, and who, by will, made some provision for defendant in error, but. devised to others the bulk of the property that came to her from her husband, said James E. Woodbridge.
The questions made during the progress of the action in the circuit court are numerous, and many of them interesting, most of which have been elaborately and ably presented to this court, in the briefs of counsel. However, according to the view we have taken of the case, it has not been found necessary to discuss or determine all of them, and we have *31 therefore confined ourselves to such of the questions as we deemed most material in deciding the cause.
We are confronted at the door of the inquiry in this case with the question, whether the contract set up in the petition, even had it been in writing and signed by the party to be charged with its performance, created such a right, or interest in his estate, as to entitle defendant in error to its specific performance, or whether it is not rather to be regarded as partaking of the nature of a personal agreement, the violation of which would only entitle the party aggrieved to an action for damages. The contract provides, generally, that she shall be made the heir of Mr. Woodbridge, and shall succeed to his property at his death. It can hardly be contended that this created an estate or interest in her, to or in the particular parcels of property, real or personal, owned by him at the time it was made, or that any such interest or estate attached to specific parcels of after-acquired property, as it may have been successively acquired by him; if so, he would have been deprived of the power of disposing of it so as to bar her right except to one who might take for value and without notice. This cannot reasonably be supposed to have been within the contemplation of the parties. Neither does any plan seem to have been in the minds of the parties by which this heirship and succession should be brought about. It could not be done by the laws of descent, for there was then no statute authorizing an adoption; only heirs by blood could acquire property in that way. Did they contemplate a will or some conveyance, in escrow perhaps, to be , delivered and become operative upon the death of Mr. Wood-bridge? Did they foresee or intend the consequences that either method would have on the rights of Mrs. Woodbridge ? To these questions no answer can be returned; not even the slighest cue to their solution can be found in the history of the transaction.
If the contract created a personal obligation only, then its breach would entitle the party injured, not to its specific performance, but to an action for damages, measured by the value of the estate she should have succeeded to, in which case the *32 action should have been brought against the estate of James E. Woodbridge, after the claim had been presented and rejected, and would be subject to the limitation in favor of executors and administrators provided in section 6113, Revised Statutes. While the determination of this question— whether the contract is one that, in any event, would be specifically performed — against defendant, would be decisive of the case, we prefer to place the decision upon the determination of another question, equally decisive, and about which we have no doubt.
If the contract should be treated as divisible, so that, to the extent which it related to the personalty, no'note or memorandum in writing would be required by the clause of the statute of frauds, relating to the sale of lands, and be held to be capable of performance within a year, so as not to be obnoxious to the clause' of the statute relating to contracts, not so capable of performance, then the omission of Mr. Woodbridge, to provide for her succession to it, is but the breach of a contract relating to personalty, which can be compensated in damages, and she would have a claim against his estate for the amount thereof, which, as has already been seen, must have been presented to his personal representative before an action could be brought, and would be subject to the four years’ limitation provided in section 6113, Revised Statutes.
The action before us, however, is not of that character, but is, in all essential particulars, one for the specific performance of the contract set forth in the petition ; and that contract, we think, is entire. Whatever the defendant in error and her mother were to do, applied equally to every part of that which the Woodbridges were to perform, and, as it concerns an interest in lands, it is required by the statute of frauds to be in writing, subject, of course, to the rule that permits certain acts of part performance to withdraw it from the operation of the statute.
The circuit court, on the trial of the action, admitted, over the objections of plaintiff in error, parol testimony of the terms of the alleged contract, before evidence was introduced *33 showing acts of part performance. This, it is claimed, is error, for which the judgment should be reversed. In support of this view they cite the cases of Lindsay v. Lynch, 2 Sch. & Lefroy, 1; Maddison v. Alderson, 8 L. R. App. Cases, 467; Dale v. Hamilton, 5 Hare, 369, and some others, as well as the most distinguished text-writers on the subject of the specific performance of contracts. The authorities are too numerous to render practicable their review in detail, but an examination of them will show that the order in which evidence should be admitted was not under discussion, but rather the effect to be given to it when received, and the holdings and opinions were, that parol proof of the terms of the parol contract should not be considered as affecting the rights of the parties until part performance of the contract had been established. The statement of the case, as well as the language used by the chancellor in the case first cited (Lindsay v. Lynch, 2 Sch. & Lefroy, 1), discloses that the parol evidence of the contract had in fact been admitted. The lord chancellor (Lord Redesdale), saying, “ The statute' of frauds prohibits my entering into the evidence of Blake on the subject; ” Blake having already testified to the terms of the parol contract in dispute.
In practice, it would be impracticable to defer hearing parol evidence of the terms of a parol contract respecting land, until the court ascertained that it had been partly performed; it would involve the necessity of hearing the case in detail, and considering one branch of the evidence before the remainder of it was admitted at all. And, whatever the rule may be elsewhere, in Ohio the practice is to permit a party to introduce all the evidence he can produce, that is pertinent to the issue on trial, the order of its introduction to be determined by the court in the exercise of a sound discretion.
One of the facts in issue, on the trial in the circuit court, was whether a contract had been made as set forth in the petition. The evidence objected to and admitted over the objection, was pertinent to that issue, and, therefore, admissible in the first instance, though it could have no effect un *34 til the contract had been taken out of the operation of the statute of frauds, by proof of part performance.
The principal contention had in the circuit court, over the facts of the case, was in respect to proof of the parol contract set forth in the petition, the defendant in error contending that she was given to the Woodbridges, by her mother, under a contract to the effect, that if her mother should forever renounce all claim and right to her care and custody, and keep secret the fact of her motherhood, Woodbridge and wife would adopt and keep her as their own child and heir, and that, at the death of said James E. Woodbridge, she should succeed to the title and possession of all his property. On the other hand, plaintiffs in error contended that the Woodbridges, desiring an object upon which to bestow their affections, and influenced by feelings of benevolence, and sympathy for her unfortunate condition in life, relieved her mother of the burden of her care and maintenance, as an act of pure charity, without entering into any contract in respect thereof.
The circuit court determined this contention in favor of the defendant in error, finding from the evidence that she was taken by the Woodbridges, maintained and educated by them, pursuant to the contract asserted by her.' Counsel for plaintiffs in error earnestly and vigorously urge this court to review that finding. They insist that the arrazzgement, whatever it may have been, was by parol; that no living witness to its tezms was produced at the trial; that both of the Woodbridges were thezz dead, and the mother had not been heard from for forty years, and that the only evidence of its terms were the declarations of Woodbridge, made more than forty years before the trial, and since carried in the memory of persons having no interest izi the matter, and who had reached an extreme old age at the time they testified. These statements of counsel are borne out by the record. We do not doubt the soundness of the propositions that evidence of this character is frequently unsatisfactory, and at all times requires careful examinatiozz azzd close scrutiny; and that estates of deceased persons should not be diverted from their *35 lawful channels of descent by other than convincing evidence. But we know of no absolute rule of law that, in this state, limits the effect to be given to the evidence of the declarations made by deceased persons. That, like all other evidence, should receive the credit that inherently belongs to it; neither more nor less.
The duty, however, of hearing and considering the weight of the evidence and determining questions of fact, is not cast upon this court by the statutes of the state, defining and prescribing its duties, but is thrown upon the circuit court in cases of the character of the one before us. We must assume that the circuit court approached the performance of its duty in this particular, fully comprehending the danger to be apprehended from the class of testimony on which defendant in error relied to support her petition; and, that the court, knowing that the tenor of the evidence of even an honest witness might be entirely changed by the lapse of a word or sentence, during the thirty or forty years that elapsed between his hearing Mr. Woodbridge’s statement and his repeating it on the witness stand, gave to such evidence all the scrutiny its nature required. And, further, we must also assume that that court comprehended the danger that waits upon all attempts to divest the heir of his inheritance, by diverting the descent of estates, from their regular and legal channel, by other than convincing evidence. That court had the witnesses before it, observed their deportment, gauged their intelligence, and was possessed of all those other advantages that attend a court placed face to face with the witness undergoing examination. Evidence that seems extremely slight to a tribunal having before it only the written statement of a witness, may be reasonably satisfactory to one who had the witness before it in person.
The court however will, in a proper case, examine the evidence in a case before it to determine if there was any evidence to support the finding of the trial court. We did so in this case; and the bill of exceptions discloses evidence, *36 which, if believed in the exact terms in which it was delivered, is sufficient to support the finding in this particular.
The circuit court also found “ That such part performance was had of such contract, by the parties thereto, and by the plaintiff, in the rendition of such service and the performance of such duties as to take the case out of the operation of the statute of frauds.” The acts found by that court and held by it to constitute part performance of the contract, are as follows :
“ That the mother of the plaintiff, in pursuance of said contract surrendered the care, custody, control and education of the plaintiff to said James E. Woodbridge when she was about two years of age, and forever concealed from the plaintiff the fact of her motherhood, and wholly gave up its society and custody; and the said James E. Woodbridge continued the care, custody, control and education of the plaintiff until she became of age, and thereafter she continued to live in his family, continuously bestowing on said James E. Woodbridge and Lydia, his wife, all the affection and performing all the services of a daughter until she was, by said James E. Woodbridge, given away as his daughter in marriage in the year 1870. The said James E. Wood-bridge and Lydia, his wife, carefully concealed from, said plaintiff the fact that she was not their daughter, the said Lydia breaking the news of that fact to her for the first time on the day after said James E. Woodbridge was buried.
“ The court further find that the plaintiff, during all those years, was kind, affectionate and obedient to both the said James E. Woodbridge and Lydia, his wife, and did perform about the house those domestic services, did render those domestic duties, and did perform those offices of kindness and affection which a daughter usually renders for parents to whom she is attached or bound by the ties of blood and affection; that said James E. Woodbridge entered in the family Bible the name ‘Mary J. Woodbridge, born Feb. 2, 1888,’ as the designation of parentage and date of birth of said plaintiff.”
A large proportion of the elaborate briefs of counsel is devoted to the discussion of the sufficiency of these acts to con- *37 statute such part performance of the contract as will take it out of the statute of frauds. The adjudications- upon the subject are innumerable, and not always in harmony with each other, and they have been supplemented by the reasonings of a large number of able text writers. The authorities in the main, if not exclusively, support'two rules upon the subject, the more strict of which requires the acts of part performance to be referable to the contract set up, and to no other one. Lindsay v. Lynch, 2 Sch. & Lef. 1, is the leading case in support of the stricter rule.
The greater number of authorities, however, and, as we think, the better reason, is satisfied if the acts of part performance clearly refer to some contract in relation to the subject matter in dispute; its terms may then be established by parol.
“ First-, then, it seems evident that all that can be gathered from acts of part performance is the existence of some contract in pursuance of which they are done, and the general character of the contract; they cannot, unless possibly in some very singular case, be themselves sufficient evidence of the particular contract alleged, because they cannot in themselves show all the terms of the contract from which they flow.” Fry on Specific Performance, § 558. See also, Brown on the Statute of Frauds, § 455; Foster v. Sale, 3 Yes. 712; Pomeroy on Specific Performance, sec. 107; Anderson v. Chick, 1 Baily Eq. (S. C.) 118; Rathbun v. Rathbun, 6 Barb. 98; Stoddard v. Tuck, 4 Maryland Ch. 475; Semmes v. Worthington, 38 Maryland, 298; Carlisle v. Fleming, 1 Harrington, 421.
Usually possession is the act of part performance relied on to take a case out of the operation of the statute of frauds; that, of course, always discloses the subject matter to which it refers, and courts in discussing its sufficiency have no occasion to expressly declare that an act of part performance must refer to the subject matter of the contract in dispute, but it is apparent that such qualification is always understood. Surely, acts that refer to some contract between the parties, respecting a totally different subject matter than the one in dispute, would not take the case out of the operation *38 of the statute. The very object of admitting proof of part performance is to show, not that there is some contract between the parties about something, but that there is some contract between them about the subject matter in dispute, in order that the contract set up respecting it may be established by parol. In Maddison v. Alderson, 8 L. R. App. Cases, 467, on page 476, Lord Chancellor Selborne says that the statute does not apply where the right to relief grows out of “ equities resulting from res gestee subsequent to and arising out of the contract. So long as the connection of those res gestee with the alleged contract does not depend upon mere parol testimony, but is reasonably to be inferred from the res gestee themselves, justice seems to require some such limitation of the scope of the statute; ” and on page 491 Lord Fitzgerald says : “ The Lord Chancellor has well laid down that the acts relied on as performance to take the case out of the statute must be unequivocally and in their own nature referable to some such agreement as that alleged, and, I may add, must necessarily relate to and affect the land, the subject of that agreement.” This is an instructive case respecting the doctrine of part performance in cases of the character of that before us. A woman had been induced, by a promise to leave her an estate for life in land, to serve the intestate as his housekeeper, without wages, for many years, and to give up other prospects of an establishment in life. The denial to her of a specific performance of the contract, she set up, was a great hardship to her; but little, if any, less than it is claimed defendant in error will sustain if relief is denied her in the case before us.
The mother of the defendant in error was a servant girl, burdened with the support of an illegitimate child of the age of about two years. The Woodbridges were prosperous people without children, or the hope of any. The mother gave them the child, and never afterwards revealed her motherhood. The Woodbridges received the infant, reared her tenderly in all respects as if she were their own daughter, used great diligence in guarding from her any knowledge *39 that she was not of their blood, and she in turn repaid this kindness by giving them the affection and performing the duties of a daughter. Acts of this character, are not usually the offspring of contractual relations. Would the ordinary observer infer from them any contract whatever ? Would they not, rather, be attributed to higher motives ? Even if we acquit the mother of any desire to conceal the evidence of her shame, or to escape the burden of supporting her infant, yet might we not expect at her hands, from motives of maternal affection alone, just what she did ? If she kept the child, the stigma of its birth would cling to it through life, and it would face a life of poverty, if not of actual want; to give it to the Woodbridges and conceal its birth, would be to remove that stigma for which she was responsible, and open up to it a useful and honorable future. Whether these acts of alleged part performance be taken singly or collectively, they do not indicate that they were done in performance of any contract or agreement respecting property rights of any kind, but rather were the manifestations of a benevolent and affectionate disposition an the part of a childless couple towards a gentle and affectionate child whose fate was placed in their keeping by a mother who was in destitute circumstances and homeless herself.
The case of Van Duyne v. Vreeland, 11 N. J. Eq. 370; same case, 12 N. J. Eq. 143, is in many respects like the one before us. And the reasoning of the court in that case would entitle the defendant in error to the relief demanded. In that case, however, the learned chancellor gave but slight attention to the principles that underlie and support the doctrine of part performance of parol contracts; he simply recited the mutual acts of the parties, and assumed that they constituted such part performance as would take the case out of the operation of the statute. The doctrine of that case, Van Duyne v. Vreeland, finds support in Rhodes v. Rhodes, 3 Sanford Ch. 279; Sutton v. Hayden, 62 Mo. 101, and some other cases in that state. But it is repudiated in Wallace v. Rappleye, 103 Ill. 229; Wallace v. Long, 105 Ind. 522. Much stress, in some of the cases relied on by defend *40 ant in error, is laid on the circumstances that the services rendered by the party seeking specific performance were not capable of being measured, nor intended to be measured, by any pecuniary standaid, and, therefore, as the party had no adequate remedy at law, an exception should be grafted on the general rule, that the payment of the consideration will not take a case out of the statute.
This general rule is well established in Ohio. Sites v. Keller, 6 Ohio, 483; Pollard v. Kinner, 6 Ohio, 528. And the rule in this state is not affected by the circumstance, that consideration was paid by personal services. Howard v. Brower, 37 Ohio St. 402; Crabill v. Marsh, 38 Ohio St. 331.
Noth withstanding that it is the established rule in Ohio that the payment of the consideration, even in the personal services of the party seeking relief, does not ordinarily constitute such part performance as will take a case out of the operation of the statute of frauds, we do not wish to be understood to hold that cases may not arise wherein specific .performance of a contract in parol may be had on the ground that the consideration had been paid in personal services, not intended to be, and not susceptible of being measured by a pecuniary standard.
What we hold in the case before us is, that although the services rendered by the defendant in error may have been of such character, yet, the circumstances under which they were rendered, when considered in connection with the other alleged acts of part performance, do not indicate that they were done pursuant to any contract or agreement whatever relating to property; and that this class of cases does not call for any further relaxation of the rule requiring proof of acts of. part performance to take a case out of the operation of the statute of frauds. This, too, is an extreme case of its class. The contest is over an estate valued at about forty thousand dollars.. The defendant in error claims to succeed to it all, by virtue of the terms of a parol contract made when she was a small infant, forty-six years before the trial in the circuit court. The only persons to whom the terms of the alleged contract were confided, were her own mother, who at the *41 time of the trial had not been heard from for over forty years, and her foster parents, James E. Woodbridge and wife, both of whom were dead; and the only proof of its terms was the declarations of Mr. Woodbridge, casually made to persons having no pecuniary interest in the matter, over forty years ago.
The judgment of the circuit court is reversed, and the petition dismissed at the costs of the defendant in error.