ANGELINE BETTINGER, Respondent, *v.* BETTY E. VAN ALSTINE and Others, Appellants.

*Action to set aside a deed — evidence sufficient to justify a judgment for the plaintiff therein.*

A widow of seventy-six years of age, who was visiting her daughter, was taken to ride by her son-in-law, with a view to seeing a monument in a cemetery, on which occasion she stopped at the house of one Barker, and while there two deeds were prepared and executed by her.

Upon the trial of an action brought by her to have such deeds adjudged to be void, the trial judge found that on the 25th day of September, 1891, the plaintiff executed and acknowledged two deeds, purporting to convey all of her real estate, in one of which Silas F. Bettinger was named as grantee, in which a portion of said real estate was described, and in the other of which Edgar G. Bettinger and Betty E. Van Alstine were named as grantees, in which the balance of said real estate was described; such deeds were drawn by and executed before Schuyler M. Barker, who thereafter caused them to be delivered to one Van Alstine, who caused them to be recorded in the office of the clerk of Jefferson county. That the persons named in said deeds as grantees were not, nor was either of them, present at the time the same were executed and left with Barker, nor was any person then present representing any of them. That said deeds were without any valuable consideration, and that at the time they were left with Barker the plaintiff did not intend, by their execution and by so leaving them, to convey a present irrevocable title to the grantees therein named to the lands therein described; nor did she intend thereby to deprive herself of the power to withdraw or alter them at pleasure; nor had she since so intended; nor did she ever irrevocably deliver said deeds to the grantees therein named, or to their heirs, or to any person for them.

These deeds each recited a consideration of one dollar, and contained a reservation of the use of the property during the life of the plaintiff.

Judgment was awarded in favor of the plaintiff that such deeds be surrendered and delivered up to be canceled of record.

After the execution and acknowledgment of such deeds, the grantor had a conversation with Barker in which she proposed to leave them with him, and she stated that she might want to make a change, and that she would be at his place again. The plaintiff testified in regard to such conversation as follows: "I may want to make a change. I shall be here again. And I said to him, 'Can't I?' And he said, 'Yes, any time you are a mind to;' that if he wasn't there when I came his wife could do the business about as well as he could. I then said to him: 'Can't I leave them, and can't I change it if I want to?' He said, 'Yes.' And I said, 'I will leave these here; I trust you to keep them. I don't want you to let them go out of the house.' He said, 'They shant go out of my house nor out of my hands.' I said, 'Keep them right here. I don't want you to let them go.' I never ordered him to give it up to any one. I changed my mind later, because I asked if I couldn't change it. He told me I could, and he promised to me it shouldn't go out of his hands nor out of his house. I did tell him to keep it there until I came again; that I might want to alter it."

Barker testified that the plaintiff said to him: "Mr. Barker, you take these papers and keep these in your possession until my death, and then you deliver Silas' deed to him and the other deed to Betty and Edgar. I think there was something said about recording them. After I had drawn these papers she directed me to keep the papers in my hands until her decease, and then to deliver Silas' deed to Silas and the other deed to Betty and Edgar. Deeds were then talked about. The deeds were talked about there and in that connection. I did not suggest, the plaintiff had directed me, to keep the deeds till her death, and then that I deliver them to the grantees. Plaintiff originated that idea — that I hold the deeds until she died and then deliver them over; that was her suggestion. She said, 'I want you to take these papers and keep them, and deliver them to these persons after my death.' She didn't deliver the deeds or authorize them to be delivered to the grantees until after her death."

Barker's wife testified that she was present on the occasion when the deeds were prepared, and heard the grantor's instructions to Mr. Barker. "She (the plaintiff) told him to keep the deeds in his possession and deliver them to the parties at her death. I heard Mrs. Bettinger tell my husband that she wanted him to keep the papers until after her death, and then to deliver them to Edgar and Betty and Silas."

Barker's son testified that he was present on the occasion when his father drew the deeds, and he heard the grantor's statements to his father. "She said to him to have them (the deeds) recorded when it was convenient for him to do so, I think, and for him to keep them in his possession and to deliver them to the persons after she was dead."

*Held*, that the testimony amply sustained the findings of the trial judge that the plaintiff did not intend to deprive herself of the power of withdrawing or altering such deeds at pleasure, and that she did not irrevocably deliver them to the grantees therein named;

That the fact that such deeds were recorded, under the circumstances, created at
most a presumption of delivery which it was competent for the plaintiff to
overcome by parol evidence;

That the Special Term had ample power to remove the cloud upon the plaintiff's
land, and as she had remained in possession thereof she was entitled to the
relief granted by the trial court, authorizing the county clerk to cancel the
records of the deeds, and to a judgment to the effect that such deeds were
inoperative and invalid to pass title to the grantees therein named.

APPEAL by the defendants, Betty E. Van Alstine and others,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of Jefferson on the
28th day of August, 1893, upon the decision of the court rendered
after a trial at the Jefferson Special Term adjudging two certain
deeds to be void, and that the plaintiff is the owner in fee of all the
lands therein described.

*John J. Lamoree* and *James A. Johnson,* for the appellants.

*Watson M. Rogers,* for the respondent.

HARDIN, P. J. :

On the 25th of August, 1891, George Bettinger, then a resident
of Ellisburg, died, leaving him surviving the plaintiff, his widow,
and his two sons, Edgar G. Bettinger and Silas F. Bettinger, and
his daughter, Betty E. Van Alstine, his only children and heirs
at law. He left a last will and testament, which was admitted to
probate in the Surrogate's Court of Jefferson county on the 23d
day of November, 1891. By his will he devised all his real estate
to the plaintiff. He had been very ill for more than a year pre-
vious to his death, and had required and had received close atten-
tion, nursing and care from the plaintiff, who became very much
exhausted thereby, she being then advanced to the age of some
seventy-six years. She resided a few miles from her daughter, and
in the early days of September went to the daughter's house in
New Haven, Oswego county. While there considerable conversa-
tion was had between the daughter and the mother, as well as the
daughter's husband, in respect to the future disposition of the prop-
erty owned by the plaintiff, and on the 25th of September, 1891,
the plaintiff was taken to ride with the husband of the daughter
with a view of seeing a monument in a cemetery not a great dis-

tance from the residence of the daughter, and on that occasion she stopped at the house of S. M. Barker, who had, to a considerable extent, acted as conveyancer in the neighborhood, and while there two deeds were prepared and executed by the plaintiff, covering the lands mentioned in the complaint. The trial judge found, viz.: "That on the 25th day of September, 1891, the plaintiff executed and acknowledged two deeds, purporting to convey all of said real estate, to wit, one in which Silas F. Bettinger was named as grantee, and in which a portion of said real estate was described.   *   *   * The other in which Edgar G. Bettinger and Betty E. Van Alstine were named as grantees, and in which the balance of said real estate was described.   *   *   *" He also found, viz.: "That said two deeds were drawn by and executed before one Schuyler M. Barker (then a notary public, residing in the county of Oswego); that upon their execution they were left by plaintiff in the possession of said Barker, who thereafter, and about the 21st day of November, 1891, procured the clerk of Oswego county to attach to each his certificate that said Barker was a notary, and that the name subscribed to the acknowledgment was his genuine signature. Said Barker then caused said deeds to be delivered to one William Van Alstine, who, on the 23d day of said November, caused them to be recorded in the office of the clerk of Jefferson county.   *   *   *" He also found "that the persons named in said deeds as grantees were not, nor was either of them, present at the time the same were executed and left with said Barker, nor was any person present acting in behalf of or representing them or either of them." He also found "that said deeds were without any valuable consideration." Also, "that at the time said deeds were left with said Barker, the plaintiff did not intend, by their execution and by such leaving, to convey a present irrevocable title to the grantees therein named to the lands there described; nor did she intend thereby to deprive herself of the power to withdraw or alter them at pleasure, nor has she since so intended." Also, "that the plaintiff has never irrevocably delivered said deeds to the grantees therein named, nor to their heirs, nor to any person for said grantees or heirs, or either of them." He also found that the defendants claimed title to the lands under the deeds, and that "said deeds and the record thereof are a cloud upon plaintiff's title, and an apparent conveyance thereof to said

grantees." As conclusions of law he found, viz.: "That, by the commencement of this action, the plaintiff has recalled said deeds, and revoked any authority given by her to said Schuyler M. Barker with reference thereto. 2. That said deeds did not and do not operate to transfer to the grantees therein named a present title to the plaintiff's said real estate or any part thereof;" and he awarded a judgment in favor of the plaintiff that the deeds be surrendered and delivered up to be canceled of record by the clerk of Jefferson county.

Appellants filed and served exceptions to the findings made by the trial judge. The deeds each recite a consideration of one dollar, and each contained a reservation of use of the property during the life of the plaintiff. It appears by the evidence that at the time the deeds were prepared no pecuniary consideration passed to the plaintiff therefor and none has passed to her since.

It seems that after the deeds were executed and acknowledged the plaintiff held a conversation with Barker in which she proposed to leave the papers so executed with him and that she avowed that she might want to make a change and that she would be at his place again, and in detailing that conversation she uses the following language: " I may want to make a change. I shall be here again. And I said to him, ' Can't I ?' And he said, ' Yes, any time you are a mind to;' that if he wasn't there when I came his wife could do the business about as well as he could. I then said to him, ' Can't I leave them, and can't I change it if I want to ?' He said, ' Yes.' And I said, ' I will leave these here; I trust you to keep them. I don't want you to let them go out of the house.' He said, ' They shant go out of my house nor out of my hands.' * * * I said, ' Keep them right here. I don't want you to let them go.' * * * I never ordered him to give it up to any one. * * * I changed my mind later, because I asked if I couldn't change it. He told me I could, and he promised to me it shouldn't go out of his hands nor out of his house * * * I did tell him to keep it there until I came again; that I might want to alter it."

In the course of the testimony given by Barker as to the execution of the deeds he says that the plaintiff said to him: " Mr. Barker, you take these papers and keep these in your possession until my death,

and then you deliver Silas' deed to him and the other deed to Betty and Edgar. I think there was something said about recording them." In the course of his cross-examination he stated : " After I had drawn these papers she directed me to keep the papers in my hands until her decease, and then to deliver Silas' deed to Silas and the other deed to Betty and Edgar. Deeds were then talked about. The deeds were talked about there and in that connection." Again the witness says : " I did not suggest the plaintiff had directed me to keep the deeds till her death, and then that I deliver them to the grantees. Plaintiff originated that idea — that I hold the deeds until she died and then deliver them over ; that was her suggestion. She said, ' I want you to take these papers and keep them, and deliver them to these persons after my death.' " Again the witness says : " She didn't deliver the deeds or authorize them to be delivered to the grantees until after her death."

In the course of the testimony of Mrs. Barker she says that she was present on the occasion when the deeds were prepared and heard the plaintiff's instruction to Mr. Barker, and the witness adds : " She told him to keep the deeds in his possession and deliver them to the parties at her death," and in the course of her cross-examination upon that subject she says : " I heard Mrs. Bettinger tell my husband that she wanted him to keep the papers until after her death, and then to deliver them to Edgar and Betty and Silas."

Willard M. Barker was called as a witness for the defendant, and he states that he was present on the occasion when his father drew the deeds and he heard the plaintiff's statement to his father, and he testifies as follows : " She said to him to have them recorded when it was convenient for him to do so, I think, and for him to keep them in his possession and to deliver them to the persons after she was dead." We think the testimony amply sustains the finding of the trial judge that the plaintiff did not intend " to deprive herself of the power to withdraw or alter them at pleasure," and that she " has never irrevocably delivered said deeds to the grantees therein named." (*Barnes* v. *Barnes*, 37 N. E. Rep. [Mass.] 379.)

In *Eames* v. *Phipps* (12 Johns. 419) it was held that a delivery is essential to the validity of a deed and there can be no delivery without an acceptance by the grantee.

In *Jackson* v. *Dunlap* (1 Johns. Cas. 114), where the deed was found in the possession of the grantor at the time of his death, it was held that there was no actual delivery to or acceptance of the deed by the grantee and, therefore, nothing passed by it.

In *Jackson* v. *Perkins* (2 Wend. 308) it was held that a person affected by a deed may, at any time, question its validity and show that it was not in fact duly executed or delivered, although it has been approved in the usual form by subscribing witnesses and recorded.

In *Roosevelt* v. *Carow* (6 Barb. 195) it was said by EDMONDS, J., viz.: "A delivery of a deed, to be valid, is such an act of the grantor touching its execution as deprives him of the power of controlling its operation, and confers on the grantee the right to enforce it, even against the will and pleasure of the grantor."

In *Hathaway* v. *Payne* (34 N. Y. 92) it was held that "Whether a deed executed and not delivered immediately, but handed to a stranger to be delivered to the grantee at a future time, be an escrow or a deed of the grantor presently, depends upon the intent of the parties thereto;" and DENIO, Ch. J., at page 113, says: "In such a case the weight of authority is, that no title passes until the final delivery, and that then, and thereafter, the title is, by relation, deemed to have vested as of the time of the first delivery to the third person." The same doctrine is stated by COWEN, J., in *Tooley* v. *Dibble* (2 Hill, 643).

In *Chouteau* v. *Suydam* (21 N. Y. 179) it was held that parol evidence was receivable as to whether there was an effectual delivery or not of a sealed instrument. The same doctrine is stated in *Brackett* v. *Barney* (28 N. Y. 340).

In *Jennings* v. *Jennings* (23 Wkly. Dig. 457) it appeared that a father executed a deed purporting to convey a farm to the plaintiff, and the next day, after it was signed and acknowledged, it was burned; no valuable consideration passed between the parties, and there was evidence that when the father had executed the deed he handed it to his wife to keep until he told her what to do with it. The next day he told her to destroy it; and it was held by this court that the evidence was insufficient to establish a delivery of the deed to or for the plaintiff at the time of its execution with intent then to vest the title in him, and that if it was intended at the time

he executed the deed to vest the title in the plaintiff, still, he had a right "to revoke this inchoate grant," and that the grantor's direction that the deed be destroyed amounted to a revocation, and that the plaintiff, the grantee named in the deed, acquired no title to the land. (*Matter of Crawford,* 113 N. Y. 565; *Martin* v. *Funk,* 75 id. 137.)

Appellants call our attention to *Messelback* v. *Norman* (46 Hun, 414). In that case it was said that delivery is essential to the validity of a deed, and that to sign and seal and acknowledge a writing, and keep it in one's possession, conveys no title, and that there must be some act showing that the grantor intends that it shall take effect; and upon the evidence there given it was finally held that it did not justify a finding that the deed was not delivered. The deed had been delivered to the county clerk, and there was no evidence to show that it was so delivered for any other purpose than for the use of the grantee, and the grantor had carried the deed to a party who had drawn it to have him take it to the county clerk's office. We think the case differs very essentially from the one before us. Our attention is also called to *Rathbun* v. *Rathbun* (6 Barb. 98), where it appeared the grantor, for a valuable consideration, executed a deed and delivered it to the clerk of Herkimer county for record and for the use of his father, and "without any condition annexed to its delivery;" and it was held that upon an acceptance by the defendant the deed took effect from the time of such delivery. The case, we think, is distinguishable from the one before us.

Our attention is also called to *Roosevelt* v. *Carow* (6 Barb. 190), in which case it appears that a deed was executed, retained by the grantor in his possession for nearly four years, and until the time of his death, without disclosing its existence; in the meantime he treated the property as his own, and after his death the deed was found in his bureau, and it was held "that such deed was void and inoperative as a deed of bargain and sale, for want of a valid delivery;" also, held, "that such deed was not valid or operative as a voluntary settlement." We think the case does not aid the appellants.

Our attention is called to *Rose* v. *Rose* (7 Barb. 174), where testimony was given to the effect that at the time of the execution of the deed "the testator actually delivered the deed to the plaintiff,"

and " nothing transpired to indicate that the delivery was intended by the parties to be complete." We think the case is not helpful to the defendants.

In *Brinckerhoff* v. *Lawrence* (2 Sandf. Ch. 400) it appeared that there were many circumstances in support of the presumption of a delivery of the instrument in such form as to make it valid, and the case did not turn wholly upon the question of whether there had been a delivery or not.

In *Crain* v. *Wright* (36 Hun, 74) it was held that the intention of the party at the time of the execution of the deed was a question of fact, and that in that case no condition was attached to the delivery of the deed, and the request made was that it should not be exposed during the lifetime of the party executing it. That case was affirmed by the Court of Appeals (114 N. Y. 307) and, in the course of the opinion delivered in that court upon the subject of whether the conveyance was delivered or not, the court observed: " This was a question of fact, and the jury found, upon sufficient evidence, and under proper instruction from the court, that the deed was delivered with the intent that it should take effect as a present conveyance of the land. The request of the grantor, that it should be kept secret during her life from all who were not obliged to know of its existence, was simply to avoid the importunity of the other heirs, and gave her no right to demand a return of the deed or to exercise any control over it. It did not postpone the operation of the instrument until after her death, nor convert the deed into a will. The circumstances warranted the presumption that the conveyance was accepted by the plaintiff, as it was delivered to her husband in trust for her benefit while she was living with him. She was in the house when the deed was prepared and executed, and was present at a conversation shortly before when the grantor announced her intention to convey the property to her. In the absence of proof of express disaffirmance, acceptance will be presumed from these facts." The fact that the deeds were put upon record under the circumstances disclosed by the evidence at most creates a presumption of delivery which it was competent for the plaintiff to overcome by parol evidence. (*Elsey* v. *Metcalf*, 1 Den. 323; *Wilsey* v. *Dennis*, 44 Barb. 354; *Nottbeck* v. *Wilks*, 4 Abb. Pr. 318; *Van Valen* v. *Schemerhorn*, 22 How. Pr. 419, opinion by BALCOM, P.

J.; *Foster* v. *Beardsley Scythe Co.*, 47 Barb. 513; *Jackson* v. *Perkins*, 2 Wend. 308; *Barnes* v. *Barnes, supra.*)

Having reached the conclusion that the evidence sustains the findings of fact made by the trial judge, we are of the opinion that his conclusions of law therefrom are correct. The Special Term had ample power to remove the cloud upon the plaintiff's land. She had remained in possession so far as the evidence discloses, and is entitled to the relief granted authorizing the county clerk to cancel the records of the deeds, and to the judgment to the effect that they are inoperative and invalid to pass a title to the grantees named therein. (*Fonda* v. *Sage*, 48 N. Y. 173; *Valentine* v. *Richardt,* 126 id. 272.)

The judgment must be affirmed, with costs.

MARTIN and MERWIN, JJ., concurred.

Judgment affirmed, with costs.