MINERVA J. BEAVER, as EXECUTRIX of ASAHEL G. BEAVER, DECEASED, APPELLANT, *v.* CHARLES C. BEAVER AND ANOTHER, as ADMINISTRATORS of JOHN O. BEAVER, DECEASED, RESPONDENTS.

*Gift* inter vivos — *deposit in a savings bank by a father for his infant son — retention of the pass-book by the father—its delivery is not essential to the validity of the gift.*

A father, with the intention of giving a sum of money to his minor child, aged seventeen, made in July, 1886, in the child's name, an application to a savings bank to receive a deposit, but signed the application in his own name. In the account-book of the bank, and in the pass-book given to the father, the account was opened in the child's name, although the moneys were at first made payable to the father, but this latter provision was stricken out before the pass-book was delivered. The rules of the bank required the production of the pass-book as a condition of the payment of a deposit, and also provided that drafts might be made personally, or by letters of attorney, or by an order in writing of the depositor. A further deposit was made to the credit of this account in October, 1866. ·

In 1867 the father drew from the account a sum representing interest. The son died in 1886, the father in 1888, having at all times kept possession of the pass-book.

In an action by the executrix of the son to recover such deposit :

*Held,* that the gift to the son was complete and executed; that, as the case did not show that the son had any testamentary or general guardian, the father, as guardian by nature, was the proper custodian of the pass-book, and his retention thereof did not prevent the gift from taking effect.

That whether or not the son was informed of the gift, at the time it was made, was not material.

That after the deposit was made it was payable only to the son, and that the mere possession of the pass-book by the father would not protect the bank in paying him the deposit.

That the agreement of the bank to repay the money was made with the son, although the father furnished the consideration, the son having power to adopt a promise made for his benefit. (LANDON, J., dissenting.)

APPEAL by Minerva J. Beaver, as executrix of Asahel G. Beaver, from a judgment, entered in the office of the clerk of the county of Ulster on the 26th day of February, 1891, dismissing her complaint, with costs, after a trial at the Ulster Circuit before the court, without a jury. (See 25 N. Y. St. Rep., 723; 53 Hun, 258, and 117 N. Y., 421.)

The court found the following facts:

*First.* That on the fifth day of July, 1866, an application was made to the Ulster County Savings Institution, a savings bank incorporated under the savings bank law of this State, and located and doing business at Kingston, Ulster county, in words and figures following:

"No. 3901. I, Asahel G. Beaver, of Esopus, Ulster county, hereby request the officers of the Ulster County Savings Institution to receive from me the sum of $854 and $\frac{4}{100}$, and to open an account with me in said institution, which account shall be subject to all the regulations and restrictions contained in the by-laws, a copy of which I hereby acknowledge to have received, and bind and oblige myself, my heirs and representatives, to conform thereto and to be governed thereby in all respects.

"Witness my hand this 5th day of July, 1866.

"JOHN O. BEAVER.

"Residence, Esopus; age, 17.

"Place of birth, Esopus."

That the said deposit of $854.04 in said institution was made by John O. Beaver, the father of said Asahel Beaver.

That at the time of said deposit the said savings institution entered on its books an account with said Asahel Beaver, beginning:

"*Dr* Ulster County Savings Institution, in account with Asahel Beaver," and crediting said Asahel Beaver with said deposit of $854.04.

*Second.* That in said account so opened by said savings institution with said Asahel Beaver were written, under the name "Asahel Beaver," the words "payable to John O. Beaver."

That at the same time the said savings institution issued and delivered to said John O. Beaver the usual savings bank pass-book in the same words as entered in its account book, to wit: "Dr. Ulster County Savings Institution, in account with Asahel G. Beaver," and that thereunder were written the words "payable to John O. Beaver." That at the same time, and before said pass-book was taken from said institution, the words "payable to John O. Beaver" were erased or stricken out by lines being drawn by pen and ink through said words so that they were scarcely legible or capable of being read.

*Third.* That at said date the said Asahel G. Beaver was a minor, under the age of twenty-one, to wit, of the age of seventeen years, and lived with his father, John O. Beaver, and so continued to live for two or more years, and, after that to the time of his death, about a mile from his father's residence.

*Fourth.* That on the 5th day of October, 1866, there was deposited in said Ulster County Savings Institution, to the credit of said Asahel G. Beaver, the further sum of $145.96, which was credited to said Asahel G. Beaver on said pass-book, and on the books of said institution on that day. There is no evidence as to who made such deposit, the only evidence being the credit on said pass-book and the account books of said bank of said sum to Asahel G. Beaver.

*Fifth.* That John O. Beaver deposited said moneys in the Ulster County Savings Institution with the purpose and intent that such moneys should thereafter be and remain the property of said Asahel Beaver.

*Sixth.* That said John O. Beaver after said deposit stated that it was made for Asahel.

*Seventh.* That the said moneys were delivered by John O. Beaver to the Ulster County Savings Institution for his son Asahel, and with intent to pass the title thereto to said Asahel.

*Twelfth.* That on the        day of        , 1867, the interest due on the sum so credited on said books to Asahel G. Beaver on the 1st day of January, 1867, to wit, twenty-seven dollars and twenty-nine cents, was drawn from said bank, and on said pass-book the receipt for said sum of twenty-seven dollars and twenty-nine cents is signed John O. Beaver.

*Thirteenth.* That Asahel G. Beaver died May 10, 1886, leaving his last will and testament, wherein the plaintiff, his widow, was

named as the sole executrix thereof, and that thereby his estate was, after the payment of a legacy stated therein, devised and bequeathed to the plaintiff. That said Asahel G. Beaver left no children or descendants surviving him. The plaintiff was duly appointed executrix of said last will and testament of Asahel G. Beaver, deceased, and qualified and is acting as such.

*Fourteenth.* That said John O. Beaver died in the month of March, 1888, intestate, and that defendants were duly appointed and are acting as administrators of his estate. That at the time of the death of said John O. Beaver said pass-book was in the possession of Sarah E. Beaver, the wife of said John O. Beaver, and the mother of said Asahel G. Beaver; and that, until his death, it was in the possession of John O. Beaver.

*Fifteenth.* That on the 13th day of April, 1888, the plaintiff, as executrix of said Asahel G. Beaver, demanded payment of the sum then standing to the credit of said Asahel G. Beaver, deceased, on the books of said savings institution, the sum of $2,713.70, the amount of said deposits, with the accrued interest thereon, which was refused, the defendants, as administrators of said John O. Beaver's estate, making claim that such moneys were part of the estate of said John O. Beaver.

*Sixteenth.* That in April, 1888, plaintiff, as executrix as aforesaid, brought suit in this court against said Ulster County Savings Institution to recover said moneys, and that defendants were, by order of this court, substituted as defendants therein, as parties defendant in the place of said Ulster County Savings Institution. That at the time of said demand of payment by plaintiff, and at the time of the commencement of this action, said pass-book was in the possession of these defendants, as administrators of said John O. Beaver, deceased.

*Seventeenth.* That by the order of this court the said moneys were left on deposit in said Ulster County Savings Institution to be paid to the successful party to this action, and that the amount now due therefor is $ ——.

At the request of the defendant's counsel the court found as facts:

II. That at the date of said deposit Asahel G. Beaver was aged seventeen years, and lived at home with his father, who was a farmer.

V. That at the time of such deposit John O. Beaver was furnished by said institution with a bank-book containing the amount of such

deposit in the name of Asahel G. Beaver, with printed rules and regulations therein; one of which provides that the depositor on making the first deposit shall be required to subscribe a declaration of his assent to the by-laws of the institution, and his promise to abide by them, another of which provides that all deposits shall be entered in the books of the corporation, and a duplicate given to each depositor, in which the sum by him deposited shall be entered, and which shall be the voucher and evidence of property in the said institution, and another of which provides that drafts may be made personally or by the order in writing of the depositor (if the institution have the signature of the party), or by letters of attorney duly authenticated, but no person shall have the right to demand any part of his principal or interest without producing the original book.

VI. That John O. Beaver on making said deposit subscribed the declaration and promise required by said by-laws.

VII. That from the time of the said deposit and the delivery of the bank-book to him as aforesaid, John O. Beaver held and controlled the bank-book so delivered to him until the time of his death, after which it was delivered to the defendants as his personal representatives.

VIII. That from the time of the said deposit the said institution recognized and dealt with John O. Beaver as the owner of the money so deposited, up to the time of his death.

XII. That there is no evidence in the case to show that Asahel G. Beaver ever had said bank book in his possession.

XIII. That Asahel G. Beaver, on the 28th day of May, 1870, opened an individual account in said institution in his own name, which continued until March 27, 1886, when he drew out $1,818.56, in full of said account; and that it was only as the holder of such account the said institution dealt with said Asahel G. Beaver.

XIV. That on the 22d day of February, 1876, the said Asahel G. Beaver made, executed and delivered to his father, the said John O. Beaver, a receipt written by himself in the words and figures following, to wit:

ESOPUS, *February* 22, 1876.

Received of John O. Beaver two hundred dollars, being in full for all dues, debts and demands to date.

ASAHEL G. BEAVER.

XV. That at the time of making the deposit in the Ulster County Savings Institution of the sum of $854.04, in the name of his son Asahel G. Beaver, the said John O. Beaver had on deposit in the said savings institution the sum of $1,000 in his own name.

XVI. That at the time of the making by the said John O. Beaver of the said deposit in the name of his son, Asahel G. Beaver, the said the Ulster County Savings Institution paid a less rate of interest on deposits in the name of one person in excess of the sum of $1,000 that it did pay on deposits in the name of one person to the amount of $1,000 or less.

XVII. That the said John O. Beaver, in addition to the book containing the deposit in the name of his son, Asahel G. Beaver, had, at the time of his death, deposits in the said Ulster County Savings Institution in his own name in five several different books, and that he also had at that time on deposit in the said Ulster County Savings Institution a deposit and book in the name of his son John O. Beaver, Jr., and a deposit and book in the name of his son Peter A. Beaver, and that on the deposit and book in the name of his son, John O. Beaver, Jr., he had drawn, on the 30th day of March, 1872, the sum of $1,000, for which he gave his personal receipt to the said the Ulster County Savings Institution, and that the books containing such deposits were at the time of his death in the possession of the said John O., and had always been in his possession.

## FINDINGS OF LAW.

I. That the deposit made by John O. Beaver, under the circumstances found in the foregoing statement of facts, did not constitute a gift of the money from the father to the son.

II. It did not create a trust in the father for the benefit of the son.

III. The fund in controversy belonged to John O. Beaver at the time of his death, and as such passed to his personal representatives, the defendants in this action.

IV. The plaintiff's complaint in this action should be dismissed, with costs of this action, and judgment for defendants should be ordered accordingly.

*F. L. & F. A. Westbrook,* for the appellant.

*Lawton & Stebbins* and *A. T. Clearwater,* for the respondents.

LEARNED, P. J.:

The Court of Appeals, when this case was before it, seems to have taken judicial notice of a practice that persons deposit money in savings banks "to the credit of real or fictitious persons with no intention of divesting themselves of ownership." If such a practice exist, we find no proof of its existence in this case. No testimony was given showing such a practice, and no reason is shown why John O. Beaver should have had any of the tricky objects in view which are mentioned by the Court of Appeals. The charter of the bank permitted deposits to the amount of $5,000. (Laws of 1851, chap. 152, § 6.) And it does not appear that John O. Beaver's deposits had previously approached that sum. And since there might have been the laudable motive of parental affection, we do not see why a less praiseworthy motive should be assumed. The application to the bank to receive the deposit was in the name of Asahel G. The request in the application was to receive the money from *him* and to open an account with *him*. It states his age, place of birth and residence. Testimony was given showing that it is the custom for the person who brings the money to sign the application. Hence John O. signed the application, although it was made in behalf of Asahel G. The signature of John O. would be properly made by him as natural guardian of his son. The additional proof given on the second trial clearly establishes that John O. intended to give this money to Asahel G., as is found by the learned justice. We are relieved, therefore, from the necessity of attributing to him any of those evil intentions, such as evading rules of the bank or escaping taxation, which the Court of Appeals seems to suppose prevail "in the great majority of cases." And the ground that there was no evidence of a gift, held by that court in the former trial, no longer exists. We know now, by positive proof, what was the intention of John O. when he caused this money to be deposited to the credit and for the benefit of Asahel G. Starting, then, with the fact that John O. intended to give this money to Asahel G., we must inquire whether any rules of law compel us to defeat this lawful intention. And we must observe that the intention was not to make a future gift, but to give at that time. It is found by the learned justice that the moneys were deposited by John O. with intent to pass the title to Asahel. The words "payable to John O.

Beaver," which had been in the account-book and in the pass-book, were erased before the pass-book was delivered by the savings bank. As Asahel G. was the son of the donor, the intention ought to be carried into effect if consistent with rules of law.

The only objection is that John O. did not deliver to Asahel G. the pass-book.

In *Martin* v. *Funk* (75 N. Y., 134) the donor deposited money in a savings bank in her own name, adding the words "in trust for L. W." The donor retained the pass-book until her death, and the donee was not notified of the gift until after that event. In an action for the money by the donee (or *cestui que trust*) against the bank, she recovered. That case settled, first, that notice of the gift was not necessary; second, that retention of the pass-book in that case, and in similar cases, did not prevent the gift from taking effect.

It appears, too, by that case, and by the similar cases of *Willis* v. *Smyth* (91 N. Y., 297); *Mabie* v. *Bailey* (95 id., 206); *Scott* v. *Harbeck* (49 Hun, 292), that the trust in such cases is treated as what is sometimes called a passive trust. For the *cestui que trust* is allowed to recover the trust funds; so that the so-called *cestui que trust* is held to be, at least after the decease of the donor, the absolute legal owner. Of course, if there were an active trust, the *cestui que trust* would not have the legal title. And on the death of the trustee, under the present statute, the property would not go to his personal representatives, but to the court to be managed by a new trustee. (Laws of 1882, chap. 185.) But in these cases, where the language of the deposit was as above stated, it has been held that the person for whom the deposit was held in trust was entitled to recover it as legal owner. Therefore, the original transaction has been considered by the courts to be practically a gift by the donor to the person named as *cestui que trust*. And the transaction is described as a gift in *Martin* v. *Funk*. This is important, because it shows that the transaction is practically the same, whether the money is deposited in the name of the donee or in the name of the donor in trust for the donee.

What, then, is the reason why this mode of giving has been held to be effectual, notwithstanding the donor retained the book? Clearly this: The donor was, after the gift, the legal custodian of

the voucher. Therefore, there was no person other than himself to· whom the donor could deliver the book. Thus it is said in *Martin* v. *Funk :* " She must be deemed to have retained it as trustee. The book was not the property, but only the voucher for the property, which, after the deposit, consisted of the debt against the bank." Notice this remark : " The book was not the property." The donor then had parted with her property by depositing it. The property, after the deposit, consisted of the debt against the bank. The bank-, book or voucher showed to whom the debt was payable, and possession of the voucher did not make the debt payable to the possessor. To whom, then, should the donor, in a case like that of *Martin* v. *Funk*, deliver the voucher ? The donor is himself trustee, and as· such is entitled to the custody of the voucher. If in such a case the donor "A" had made a deposit in the name of " B in trust for· C," then it might be said that a delivery of the voucher to B would be necessary.

Now, the principle thus settled in these cases is applicable here. Asahel G. was a minor. John O., as father, was natural guardian. He was entitled to the custody of this voucher for property belonging to his minor son. It is not meant by this that as such guardian he could dispose of the property of his son. But it is plain that, in the absence of proof that any one else had been appointed guardian, he was the proper person to have the custody of this voucher. Let us suppose that Asahel G. had been only a year old, what could John O. have done with the pass book when, for the purpose of a· gift, he had deposited this money in Asahel's name. Should he tie the book around the infant's neck or fasten it to its apron string ? Plainly he could make no delivery of the book to a mere infant. Or if any other person had made the gift, would not such a person have delivered the book to the father of the infant ? To deliver the book to a mere infant would be folly. And the same principle must apply to a minor who is older. When the donee is a minor, younger or older, in the absence of any appointed guardian, the father must be the natural custodian of any such voucher.

There are cases in Massachusetts holding that an acceptance of a gift, or notice to the donee, is necessary to complete the gift. But in *Gerrish* v. *New Bedford Institution for Savings* (128 Mass., 151), it is pointed out that the decison in *Martin* v. *Funk* (*ut supra*)

differs from the view of the Massachusetts court and holds a deposit. in trust to be valid though the donee knew nothing of it.

It is sufficiently established in this case, and is so found, that. John O., at the time of the deposit, made it " with the purpose and intent that such moneys should thereafter be and remain the property of said Asahel Beaver." It is proved (if proof were necessary) that it is very general for parents to bring money and deposit it in the. name of their minor children. So that the only question is whether the continued possession by John O., of the voucher, defeats his. intention as a matter of law.

If he had had this money deposited in his own name, adding the words " in trust for Asahel G. Beaver," and had retained the voucher,. this would have been a valid gift to Asahel, though Asahel did not. know of the transaction. (*Martin* v. *Funk.*) It would have been said, John O. retained the voucher as trustee. Now, when, with the. same intent and purpose, he deposits the money absolutely in Asahel's name, and retains the voucher, it is argued this is no gift The distinction between the two cases is thin, very thin, when used to defeat the laudable intent of a father to give money to a minor child. And if the distinction is sound, then a father cannot validly give money to his minor child by deposit in a savings bank except through the fiction of calling himself trustee. If the retention of the voucher in the Funk case was held to be in the character of a. trustee, why was not the retention by John O. in this case held to be in his character of guardian by nature, after his intention to give the money has been proved as a fact.

Of course, the great object of requiring delivery is to mark the distinction between a mere intention to give, at some future time,. and a present act of giving. That was marked by the deposit in Asahel's name, with the intent, now established by other proof, of making a gift. The consideration is love and affection. The transfer is made by putting the money in the bank payable to Asahel, and to no one else. The bank, by its rules, agrees to endeavor to prevent frauds and impositions, and yet declares that payments to a person presenting the book shall discharge the institution. But that rule does not authorize the bank negligently to pay to a person other than the one in whose name the account stands. (*Appleby* v. *Erie County Savings Bank*, 62 N. Y., 12.) The courts have gone even

farther than this and have said that payments to a stranger without the authority of the creditor are not valid. (*Smith* v. *Brooklyn Savings Bank*, 101 N. Y., 58.) And, under the decision in this last case, John O. Beaver could not, without the written order of Asahel, draw any of this money, although he did have possession of the pass-book. The language of the rules of the bank construed in that case is similar to that of the rules of this bank. And the court say, speaking of the pass-book "its possession constitutes in itself no evidence of a right to draw money thereon." The mode of making payments is provided for by the rules, viz., personally, by order in writing and by letters of attorney. It was then only by Asahel personally, or by his written order or his letters of attorney, that this money could be drawn. If it is said that the donor must part with control over the gift, what control did John O. retain over this money? It was not payable to him. The possession of the bank-book did not authorize him to draw the money without authority from Asahel. (*Crawford* v. *West Side Bank*, 100 N. Y., 50.)

The case of *Schoenwald* v. *Metropolitan Savings Bank* (57 N. Y., 418), is referred to in the Smith case, above cited, and it is said that in that case the language of the contract was substantially different. Whether that case can stand against the decision of *Smith* v. *Brooklyn Savings Bank* we need not inquire. It is enough that the rules of the bank in the present case bring it within the later decision. And, under that decision, John O. could not, by virtue of possession of the pass-book, draw out any of this money. If the possession of the pass-book did not authorize him to draw the money, then such possession gave no control over the money, the thing given.

In *Matter of Crawford* (113 N. Y., 560) the deposit of money in a bank to the credit of another person was held to be a gift. As to the bonds in that case, they were coupon bonds, payable to bearer, and, therefore, passed by delivery. They had not been delivered, and the court say: "Nothing appears in the case as to what was the effect of the so-called registry." And the registration had certainly no effect upon the coupons which remained still payable to bearer.

The pass-book in the present case was not negotiable paper, and the money entered on it was payable to no one but Asahel. And payment by the bank to Asahel, when of age (if not before; see the

charter of the bank), would have discharged the liability of the bank. He was the depositor, and the agreement of the bank was with him. It is immaterial from whom the consideration came. The promise was to Asahel. He could adopt it, even though not a party. (*Lawrence* v. *Fox*, 20 N. Y., 268.)

It seems to us that this subject of the delivery of the gift was not so decided in the Court of Appeals that the remarks in the opinion are controlling on the new and most important facts presented on the second trial, viz., the intention of John O. to make a present gift, and his intention that the money should become and remain the property of Asahel. Nothing was said as to the possibility of making an actual delivery of the voucher, and nothing as to the inability of John O. thereafter to draw out the money legally.

We think, therefore, that the judgment should be reversed and a new trial granted, costs to abide event.

MAYHAM, J. :

I think, on this trial, the plaintiff has substantially overcome the objection of the Court of Appeals in this case. (Reported 117 N. Y., 421.) The ground assumed for a reversal in that case was that the plaintiff had failed to prove the intention on the part of John O. Beaver to make a gift to his son at the time of making the deposit in the bank, and that the retention of the bank-book by him was evidence of a want of delivery.

The court now, upon sufficient evidence, finds that it was the intention of John O. to make a gift of the money deposited at the time of the deposit, and I think that my Brother LEARNED has established most successfully and completely upon principle and authority, that the retention, by the father, of the bank-book when the gift is made, or intended to be made, by him to his infant son, is as much an executed gift as if he had delivered the book to the son, or to some other person for the use and benefit of the son. He being the natural guardian and custodian of the property of his infant son in the absence of any general guardian, could not defeat his own executed gift by retaining the bank-book.

LANDON, J. (dissenting) :

Upon the facts as now found, we think the trial court was obliged, by the opinion of the Court of Appeals upon its review of the

former trial (117 N. Y., 421), to find in favor of the defendants. The Court of Appeals said (p. 429) : " We are of opinion that there is lacking in this case two of the essential elements to constitute a gift by John O. Beaver to his son of the money deposited July 5, 1866, viz , an intent to give and a delivery of the subject of the alleged gift." The plaintiff, upon this trial, has supplied the evidence of the intent to give, but no advance whatever has been made in supplying evidence of the delivery of the subject of the alleged gift. All the facts cited by the Court of Appeals in its opinion (p. 432), to show that there was no proof of delivery are unchanged.

The learned counsel for the plaintiff now earnestly contends that because John O. Beaver intended, by making the deposit to the credit of Asahel, and did say that he had made a gift to him of the amount, that it should have been found, as a fact, that the gift was complete. There are cases, of which the early case of *Grangiac* v. *Arden* (10 Johns., 293), is one, in which the fact of delivery has been found, from the declarations of the donor, when the other evidence in the case failed to show delivery. But, as we interpret the opinion of the Court of Appeals, the established fact of the non-delivery of the pass-book and the continued dominion of John O. Beaver over the deposit resulting from his form of making the deposit, his possession of the pass-book and the rules of the bank, which formed part of the contract of deposit, require the finding that there was no delivery of the subject of the gift. The effect of these facts is that the intent to deliver remained unperformed. The judgment must, therefore, be affirmed unless some error to the prejudice of the plaintiff occurred upon the trial. The burden rested upon the plaintiff to show the delivery of the subject of the gift. Clearly so, after the particulars of the deposit had been shown by the cross-examination of her witnesses. Under the circumstances of this case, it was needful to show the delivery by John to Asahel of the pass-book, or some equivalent act. So the Court of Appeals held. This the plaintiff had not done and could not do. The defendants, however, called several witnesses whose testimony tended to show not only John O. Beaver's occasional custody of the pass-book, but his continual custody of it. In view of the plaintiff's failure to prove delivery of the pass-book, it cannot be important whether the defendant's witnesses, who were unnecessarily called to establish the

negative, were competent or not. But if we assume that delivery of the pass-book might have been inferred from John O. Beaver's declarations, if there were no evidence except that extracted from the plaintiff's witnesses — and this was probably the theory of the defendants — then it was material for them to show who had the pass-book. · Among other witnesses, the widow of John O. Beaver testified, under objection based upon section 829 of the Code, that on the day the deposit was made her husband and herself went together to Kingston, some seven or eight miles distant from their home; that her husband had the money in his pocket; that Asahel, then a lad of seventeen, remained at home; that she did not go with her husband to the bank, but that he brought the pass-book home with him, and thereafter and until her husband's death the book was kept in the bed-room which she and her husband occupied; that she and her husband, or both of them, had the possession of the book. The substance of this testimony is that she saw her husband have the book on the day of the deposit and saw where he afterwards kept it, and that he did keep it until his death. Strictly speaking, this was the unilateral act of the husband which the wife observed. There is no necessity to infer from it that the husband ever delivered the book to his wife, or that she was in any way such a participant in its custody as to make his custody of it derivable from or through any transaction between the two. Her testimony, therefore, falls neither within the spirit of the prohibition nor within its letter. As the book was kept in the bed-room of herself and husband, she, doubtless, often performed some acts of care respecting it, just as she may have done in respect of the furniture in the same room; but such acts on her part supply no defect in the completeness of the husband's custody of the book as shown by his placing it and keeping it in that room. His custody gains no support from any transaction between himself and wife touching the book; and if any such transaction may be inferred from the testimony of the wife, it is incidental and collateral and is wholly inconsequent. The widow testified that she rode to Kingston with her husband on the day of the deposit; that undoubtedly was a transaction between herself and husband, but it was testimony incidental to the material part of her testimony; if the material part of her testimony was competent, it would be carrying the exclusion of section 829 beyond reason to con-

demn the material, because it was incidentally connected with testimony which was justly regarded as merely incidental and preliminary.

Before the testimony of the widow of John O. Beaver was received she executed and delivered to Charles C. Beaver an assignment of all her interest in the subject-matter of the action. She thereby ceased to be "a person interested in the event," and as that was the only disqualification under which she rested its removal made her competent. This practice is open to abuse, but as it is authorized by authority we must recognize it. (*Matter of Wilson,* 103 N. Y., 374; *Loder* v. *Whelpley,* 111 id., 239.) It disposes of the objection to the testimony of Alice J. Beaver.

The judgment should be affirmed, with costs.

Judgment reversed, new trial granted, costs to abide event.